THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
EARL COWAN, Defendant-Appellant.

First District (3rd Division)   No. 82—1781

Opinion filed March 14, 1984.

RIZZI, J., dissenting.

James J. Doherty, Public Defender, of Chicago (Kathleen M. McGinnis and Judith A. Stewart, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Adam Dabek, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA delivered the opinion of the court:

Defendant Earl Cowan was charged with two counts of armed robbery, two counts of armed violence, and one count each of home invasion, burglary, unlawful restraint, aggravated kidnaping and attempt burglary. A jury found defendant guilty of unlawful restraint and attempt burglary and acquitted him of all the other charges. The

trial court sentenced him to extended terms of 10 years for attempt burglary and six years for unlawful restraint. The sentences were to run consecutively with 15 months credit for pretrial incarceration only on the attempt burglary sentence. On appeal defendant contends that he was not proved guilty beyond a reasonable doubt; that the prosecutor's closing argument was inflammatory and prejudicial; that the trial court erred in giving a *Prim* instruction to the jury; and that the trial court abused its discretion by imposing multiple extended terms to be served consecutively.

James Wolf, a homosexual, testified for the State that on the evening of April 24, 1981, defendant broke in the back door of Michael Dermody's apartment where Wolf was staying. Wolf was residing there to help Dermody, 88 years old, in and out of bed and with meals. Wolf testified that he was sleeping on the floor when defendant entered. Defendant said that he needed help because four white men were chasing him. Defendant placed a telephone call ostensibly to the police but Wolf did not hear the conversation. When Wolf suggested calling the police again, defendant told Wolf to do so, but Wolf hesitated because he was not sure of the emergency number. Defendant placed another telephone call and looked out the window. He then drew a knife and robbed Wolf and Dermody. Defendant directed Wolf to carry the stereo downstairs to Wolf's automobile and subsequently defendant took a television set. As they walked, defendant asked who lived across the hall. Wolf told him that Wallie Mitomme, an elderly lady, lived there, and defendant threw his shoulder against the Mitomme door. The door did not give, and the men proceeded to Wolf's automobile. Defendant told Wolf to keep his head down and drove to an apartment building in Oak Park where they brought the stereo and television. After a few minutes, defendant told Wolf he would bring him back. Defendant drove awhile, stopped and told Wolf to keep his head down. Defendant departed and after a few minutes Wolf drove to the Oak Park Police Station to report the incident.

Wallie Mitomme testified that she was sleeping when she heard a loud noise in her living room. She went back to sleep and the next day she saw that her door was splintered.

Michael Dermody testified that he was awakened by voices. He saw Wolf standing there with a black man.

After conducting an investigation, the Oak Park police obtained a search warrant for the apartment of defendant's brother. There, they seized the stereo, television set and two knives.

Defendant testified that as he urinated in an alley, he saw a man in an apartment window motioning him to come upstairs. Wolf invited

him in for a drink and then made homosexual advances to which defendant acquiesced. Defendant refused Wolf's request to stay all night, but accepted Wolf's offer to drive him to defendant's brother's apartment. Defendant earlier had offered to try to repair Wolf's stereo and television, and the men brought the sets with them. Defendant was arrested at his brother's apartment on the following day.

██ Defendant initially contends that he was not proved guilty of the attempt burglary of the Mitomme apartment and of the unlawful restraint of James Wolf beyond a reasonable doubt. It is fundamental that the credibility of witnesses and the weight to be given their testimony is for the jury, and the reviewing court will not substitute its judgment for that of the jury merely because the evidence is conflicting, unless guilt has not been established beyond a reasonable doubt. (*People v. Anderson* (1964), 30 Ill. 2d 413, 197 N.E.2d 24.) Here, the triers of fact rejected some of Wolf's testimony, as was their prerogative, but they did not find him incredible. Moreover, Wolf's testimony was corroborated by that of Wallie Mitomme who found her door splintered the next morning. There was sufficient evidence to establish defendant's guilt of both crimes.

██ We next consider defendant's contention that the trial court erred in giving a *Prim* instruction to the jury.

When the trial was concluded, the jury received the instructions and retired to deliberate at noon. During the course of their deliberations on that day, the jury sent three notes to the judge. The first note requested a copy of the trial transcript to review Wolf's testimony. The trial court denied the request. The next two notes stated as follows:

"4:14

Your honor—
We are totally deadlocked. There is no way that we will be able to unanimously agree one way or another. The evidence is inconclusive.

(signed) Bill Frey, Foreperson

Your honor—
We have carefully deliberated each and every charge and are completely and hopelessly unable to unanimously agree on either a guilty or not guilty verdict. We believe that further progress is 'impossible' (6 votes) 'unlikely' (6 votes).

(signed) William Frey—Foreperson."

The jury deliberations continued until 7 p.m. when the judge ordered the jury sequestered for the night. The next morning after 45

minutes of deliberation, a fourth note was sent to the judge. It read, "Your honor, this jury will never reach a unanimous decision on any of the nine counts. (signed) Bill Frey, Foreperson." At this time, over the objection of defense counsel, the judge read a *Prim* instruction to the jury and thereafter the jury returned a guilty verdict on two counts and acquittals on seven counts.

In *People v. Prim* (1972), 53 Ill. 2d 62, 289 N.E.2d 601, our supreme court dealt with the issue of supplemental instructions to deadlocked juries. Although the court recognized the possible coercive effect of a supplemental instruction, it believed a deadlocked jury should not be left to grope without some guidance from the trial court. Pursuant to its supervisory powers, the court set forth a specific instruction which avoided the coercive language previously used in *Allen* instructions. (See *Allen v. United States* (1896), 164 U.S. 492, 41 L. Ed. 528, 17 S. Ct. 154.) The *Prim* instruction, which was given almost verbatim by the trial court in the present case, was based on the recommendations of the American Bar Association Project on Minimum Standards for Criminal Justice. The trial court has great latitude as to when a *Prim* instruction should be given. (*People v. Preston* (1979), 76 Ill. 2d 274, 391 N.E.2d 359.) The time at which it is given as well as the surrounding facts are considered in determining the coercive effect on the jury. (*People v. Bonds* (1980), 87 Ill. App. 3d 805, 410 N.E.2d 228.) There is less danger of coercion when the instruction is given to a venire (*People v. Bonds*), or to a jury which has not reached a deadlock. *People v. Wilson* (1976), 37 Ill. App. 3d 560, 346 N.E.2d 161; *People v. Prim*.

■ We hold that the giving of the *Prim* instruction in the present case, rather than properly given to guide the jury, had a coercive effect on the jury and was prejudicial to defendant. Contrary to the effect the instruction was intended to provide, the trial court left the deadlocked jury groping without guidance after it sent two deadlocked notes and, only after the third note, provided the jury with the *Prim* instruction. We have not found a case where the use of the *Prim* instruction was approved after eight hours of deliberation and three deadlocked notes. In the *Prim* case, a supplemental instruction was given after the jury had deliberated only four hours and the foreman indicated that he believed a unanimous verdict was possible. See also *People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133 (supplemental instruction after seven hours of deliberations and foreman's statement that a verdict could be reached in a reasonable period of time); *People v. Preston* (1979), 76 Ill. 2d 274, 391 N.E.2d 359 (*Prim* instruction after 6½ hours of deliberations and foreman's statement that the jury had not completely reached a verdict); *People v. Harris*

(1981), 96 Ill. App. 3d 970, 422 N.E.2d 208 (*Prim* instruction given at start of the second day of deliberations after jury indicated for first time that it was deadlocked.)

Although we do not establish a rigid rule that a *Prim* instruction after three deadlocked notes is coercive, we find from the surrounding circumstances that the instruction in the present case had a coercive effect. The verdicts reached here, guilty on two of the least serious charges and not guilty on the seven more serious charges, indicate a compromise was reached after the jury was told to keep deliberating despite its deadlock. Where the jury was repeatedly told it must continue to deliberate after eight hours of deliberations and several notes stating it "will never reach a unanimous decision," the jury may well have believed it had no other choice but to reach a verdict.

Two cases cited by the State in support of its contention that the *Prim* instruction was properly given, *People v. Harris* (1981), 96 Ill. App. 3d 970, 422 N.E.2d 208, and *People v. Allen* (1977), 47 Ill. App. 3d 900, 365 N.E.2d 460, are factually distinguishable from the present case. In those cases, the judges received only one or two deadlocked notes. The notes did not comment negatively about the evidence, nor did the verdicts reached reflect a compromise or coercion.

In light of our holding that the *Prim* instruction had a coercive effect on the jury, we need not address the errors claimed by defendant with regards to the sentence imposed and the alleged impropriety of the prosecutor's closing argument.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

McGILLICUDDY, J., concurs.

JUSTICE RIZZI, dissenting:

I do not agree with the majority that the *Prim* instruction had a coercive effect on the jury. Also, I do not believe that the trial court erred in giving the *Prim* instruction. Accordingly, I would affirm the judgment.

The jury found defendant guilty of unlawful restraint and attempt burglary, and not guilty of burglary, home invasion, aggravated kidnaping, two counts of armed violence and two counts of armed robbery. I fail to see how this finding demonstrates coercion. To me, the fact that the jury did not reach the same finding as to all counts mitigates against the allegation that the jury was coerced. (See *People v.*

*Harris* (1981), 96 Ill. App. 3d 970, 976, 422 N.E.2d 208, 212.) Moreover, the jury was not polled. While it is not necessary that a jury be polled in order to establish coercion, the fact that the jury was not polled militates against a conclusion that the jury was coerced.

In addition, I see no error by the trial judge in giving the *Prim* instruction. The jury began its deliberation at noon. During the course of the deliberation on that day, the judge received two notes from the jury indicating that it was deadlocked.[1] At 7 p.m., the judge ordered the jury sequestered for the night. Deliberation by the jury began the following day at 9 a.m. At 9:45 a.m., the jury sent the judge a third note stating that it was deadlocked. At that point, after less than eight hours of deliberation, the judge read the *Prim* instruction to the jury. Thereafter, the jury returned its verdict. The record does not demonstrate how long the jury deliberated after it was read the *Prim* instruction. However, even if the jury had deliberated only a short period, that would not demonstrate that the jury was coerced. In *People v. Preston* (1979), 76 Ill. 2d 274, 285, 391 N.E.2d 359, 364, the court stated: "Nothing in *Prim*, where the court found no coercion although the jury deliberated only 15 minutes after receiving the instruction, requires a reversal."

Under the circumstances, I see no reason to reverse the trial judge's decision to give the jury the *Prim* instruction. Plainly, it is within the trial judge's discretion to permit further deliberation even after the jury has stated that it is hopelessly deadlocked or that it cannot reach a verdict. (*People v. Allen* (1977), 47 Ill. App. 3d 900, 906, 365 N.E.2d 460, 464; *People v. Harris* (1981), 96 Ill. App. 3d 970, 975-76, 422 N.E.2d 208, 212.) In *Allen*, after deliberating between six and seven hours, the jury indicated that it was deadlocked. The court then sequestered the jury for the evening and deliberation resumed for about two hours on the following morning. At that point, the jury again indicated in somewhat stronger terms its inability to reach a verdict. The court then read the jury the *Prim* instruction, and a verdict was reached approximately 1½ hours later. (*People v. Allen* (1977), 47 Ill. App. 3d 900, 906, 365 N.E.2d 460, 464.) The judgment in *Allen* was affirmed. In *Harris*, after a period of deliberation, the jury informed the trial court that it could not reach a verdict. The

---

[1]The majority opinion refers to an additional note. In its first note, the jury requested a copy of the trial transcript in order to review Wolf's testimony. The court denied the request. It is within the discretion of the trial court to allow or refuse a request for review of testimony (*People v. Davies* (1977), 50 Ill. App. 3d 506, 513-14, 365 N.E.2d 628, 634), and the court here did not abuse its discretion in denying the jury's request.

trial court arranged for overnight housing. The following morning, the foreman sent a note to the trial court which stated, " 'I believe that this jury is hopelessly deadlocked (11 to 1) and that further discussion would be pointless.' " At that point, the jury had been deliberating for 11 hours. The trial judge then gave the jury the *Prim* instruction, and the jury subsequently found the defendant guilty on two counts of armed robbery and two counts of armed violence. The defendant was found not guilty on two counts of unlawful restraint. The judgment was affirmed. (*People v. Harris* (1981), 96 Ill. App. 3d 970, 975, 422 N.E.2d 208, 212.) Here, although the jury sent the trial court three notes stating that it was deadlocked, it had been deliberating less than eight hours when it was read the *Prim* instruction. The eight-hour deliberation was certainly not unduly long. Thus, I believe that the trial judge acted properly when he gave the jury the *Prim* instruction.

To my knowledge, up until now, there has never been a criminal case in Illinois in which a verdict was reversed on the ground that the jury was coerced after the *Prim* instruction was given. While this fact may not be of controlling significance in itself, it does suggest to me that reviewing courts have taken the perspective that trial judges must be given ample discretion and "great latitude" in deciding whether to give the jury the *Prim* instruction. (*People v. Preston* (1979), 76 Ill. 2d 274, 283-84, 391 N.E.2d 359, 363.) There is nothing in this record to demonstrate that the trial judge abused that kind of discretion. Moreover, I believe that the majority opinion will unduly restrict the discretion that is to be exercised by trial judges, because it will dissuade the judges from giving the *Prim* instruction after they have received three notes indicating that a jury is deadlocked. In effect, the use of the *Prim* instruction will be curtailed to the extent that its use will have a Plimsoll mark, below which trial judges will not act.

The majority seems to place significance on its conclusion that the notes commented "negatively about the evidence." However, that conclusion can be reached about any note from any jury that states that it is deadlocked. Of course, if a jury did not feel "negatively" about the evidence to some extent, it would not be deadlocked. Thus, contrary to what is stated by the majority, the notes from the jury in the present case were no different from the notes in any other case where the jury stated that it was deadlocked and use of the *Prim* instruction was approved. (See *People v. Allen* (1977), 47 Ill. App. 3d 900, 906, 365 N.E.2d 460, 465 (1977); *People v. Harris* (1981), 96 Ill. App. 3d 970, 975, 422 N.E.2d 208, 212.) Also, if the length of time

that the jury is allowed to deliberate is not unreasonable, it should make no difference whether the jury gives the judge two notes or three notes stating that it is deadlocked. It is the function of the jury to continue to deliberate and resolve any deadlock situation it may encounter unless the deadlock continues for an unreasonable length of time. I do not regard an eight-hour period of deliberation to be unreasonable under the circumstances of this case.

In light of my disagreement with the views and holding expressed by the majority in regard to the *Prim* instruction, I shall not address the other errors claimed by defendant with regard to the sentence imposed and the alleged impropriety of the prosecutor's closing argument other than to state that I have reviewed these alleged errors, and I believe that defendant's arguments are without merit. Also, I agree with the majority that there was sufficient evidence to prove defendant guilty of the two crimes for which he was convicted. Accordingly, I would affirm the judgment.