THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SCOTT STEVE PLANTINGA, Defendant-Appellant.

First District (4th Division)   No. 83—2295

Opinion filed April 4, 1985.

Sheldon L. Banks, of Chicago (Glenn E. Gutsche and Mark W. Solock, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat,

David A. Cuomo, and Joan M. O'Brien, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Defendant was charged with rape, deviate sexual assault, unlawful restraint and aggravated battery. Following a jury trial, he was found guilty of unlawful restraint and sentenced to a maximum term of three years in the Illinois Department of Corrections.

On appeal, defendant contends: (1) that he was not proved guilty beyond a reasonable doubt, (2) that he was denied a fair trial due to the impropriety of the prosecutor's closing argument, (3) that the trial judge committed reversible error by prematurely giving a *Prim* instruction, and (4) that the trial judge abused his discretion by sentencing defendant to the maximum statutory term of imprisonment.

We affirm the conviction and sentence.

BACKGROUND

The testimony adduced at trial revealed the following:

The victim attended a Halloween party with her boyfriend, Don O'Brien, on the night of October 31, 1981. The victim and O'Brien left the party at approximately 3:30 a.m. She dropped off her boyfriend and proceeded to visit a bar where her brothers worked. She arrived at the bar around 4 a.m., had one beer and left an hour later.

The victim then drove to her boyfriend's parents' home at 841 West Oakdale and parked her car in the driveway. Having no house key and realizing that her boyfriend's brother, John O'Brien, would soon be coming home from work, the victim remained in her car and waited for someone to arrive and let her into the house.

While the victim was waiting, she fell asleep. She testified that the next thing she knew, the car door opened, causing the dome light in the car to go on. When the victim turned to see who had entered the car, she saw defendant, who got into the car, placed his hand over her mouth and said, "Shut up or I'll kill you." Defendant then struck the victim with his other hand and told her, "Don't say anything *** you're going to do what I say and you are going to like it." Defendant then partially undressed the victim, who attempted to open the car door, only to find that it was locked. The victim testified that defendant then started choking her, banged her head against the car window two or three times, and had intercourse with her. Defendant then attempted anal penetration, but this attempt was interrupted by the sound of a police siren.

Upon hearing the siren, defendant pushed the victim's head down

and laid on top of her until the siren passed. He then told the victim that he "can't do this anymore," got out of the car, and fled. The victim stayed down in the car for awhile and then rang the doorbell at the O'Brien home. The victim's boyfriend's sisters let her in and then drove her to Columbus Hospital, where she remained for the next five days, suffering from a severe concussion.

Approximately an hour after her arrival at the hospital, the victim gave a police officer a description of her assailant. She described him as a man in his midtwenties to 30, moustached, between 5 and 6 feet tall, weighing approximately 180 pounds, wearing blue jeans, a white button-down collared shirt, a dark velour vest over the shirt, and a wristwatch with a square black face and a dark leather band. The police report made no mention of a moustache. She was uncertain as to her attacker's height because he was seated throughout the incident.

On November 10, 1981, the victim went to Area 6 police headquarters and was shown a photo array from which she positively identified defendant. On March 13, 1981, the victim viewed a lineup at the police station and again positively identified defendant. She also made an in-court identification of defendant as the man who restrained her.

John O'Brien, a resident of 841 West Oakdale, testified that on November 1, 1981, at approximately 5 a.m., he was returning from work and looking for a parking space in the vicinity of 841 West Oakdale. He saw two cars in his driveway, that of his parents and that of the victim. He also saw defendant "hanging around" in front of the house. O'Brien stated that he had to circle the block twice to find a parking space and that the first time around, he saw defendant getting out of a car directly across the street from 841 West Oakdale. Defendant then proceeded across the street to the side on which the victim's car was parked. The second time O'Brien circled the block, he saw defendant in front of the Oakdale house, walking down the sidewalk towards the driveway of 841. O'Brien testified that there was a street light directly across from 841 West Oakdale. O'Brien finally found a parking space some time between 5 a.m. and 5:30 a.m., and walked toward his house. He reported that he did not see anyone in either of the cars parked in his driveway, but explained that he did not have to pass the parked cars as he walked into the house.

At the conclusion of the State's case in chief, defendant moved for a directed finding. The trial court granted the motion only as to the count for deviate sexual assault.

Defendant testified that on October 31, 1981, he had driven from his home in Michigan to a friend's apartment at 809 West Oakdale in Chicago, to attend a Halloween party. He arrived at approximately

9:30 p.m., wearing blue jeans and a white turtleneck shirt. His friends made him paint his face white with a star on it. He stated that he wore the makeup all evening and did not take it off until he went to bed. Defendant had a moustache, stands approximately 6 feet 3 inches tall, and weighs around 210 pounds. He denied ever owning a dark-faced wristwatch with a dark leather band or a dark velour vest. However, on cross-examination, when faced with a photograph and the garment itself, he admitted owning both items.

Defendant further testified that he left the Halloween party at 809 West Oakdale between 12:30 a.m. and 1 a.m. on November 1, 1981, and went to the Rush Street area with three friends. The group left the Rush Street area and went back to 809 West Oakdale at approximately 5 a.m. Defendant stated that he parked his car on Oakdale, and he and his friends walked across the street, where they saw the victim sitting on the curb in front of 841 West Oakdale. Defendant and the others asked her if she was alright and helped her get into her car. The group then returned to the apartment, where two others were present.

One of those present at the Oakdale apartment was Richard Ishmael, a friend of defendant's from Purdue University. Ishmael testified that when defendant and the others returned to the apartment, defendant was still wearing white face makeup. The group informed Ishmael about their activities on Rush Street and told him about the young girl they had seen sitting outside on the curb. Ishmael and defendant were to share the couch downstairs and sat around talking until 6 a.m., after the others had gone upstairs to bed. Ishmael stated that around that time, defendant left the apartment and went outside to get his shaving kit. He stated that defendant was gone from the apartment for approximately five minutes and that when he returned, he was still wearing the white makeup but that his moustache was visible. Defendant then washed off the makeup, and he and Ishmael went to sleep on the downstairs couch.

Defendant's testimony was corroborated by two of the friends who were with him on November 1, 1981. The third companion did not testify. On rebuttal, the victim denied ever having sat on the curb that morning and ever having seen or spoken to defendant and his friends.

The jury found defendant not guilty of rape and aggravated battery but guilty of unlawful restraint. Defendant was sentenced to a three-year term in the Illinois Department of Corrections. He now appeals.

I

■■ Defendant's first contention on appeal is that he cannot, as a matter of law, be convicted of unlawful restraint because it was "incidental to the perpetrator's primary goal, which was to commit rape." As authority for this proposition, defendant relies on *People v. Kuykendall* (1982), 108 Ill. App. 3d 708, 439 N.E.2d 521, which holds that unlawful restraint is not a lesser included offense of home invasion. Given the facts of the instant case, in which defendant was neither charged with nor convicted of home invasion, we find *People v. McCann* (1979), 76 Ill. App. 3d 184, 394 N.E.2d 1055, in which this court held that unlawful restraint is a lesser included offense of rape, to be much more instructive. Following *McCann*, we find that defendant's conviction for unlawful restraint is not invalid as a matter of law.

II

■■ Defendant next contends that he was not proved guilty beyond a reasonable doubt of unlawful restraint. He bases this contention, in part, on the fact that he was acquitted of rape and aggravated battery, concluding that such acquittal reveals that the jury found the victim's testimony to be incredible. Because acquittal on these other charges and conviction of unlawful restraint are not legally inconsistent verdicts, we need only determine if there was sufficient evidence presented to the jury to enable it to find defendant guilty beyond a reasonable doubt. Our review of the record convinces us that there was.

The testimony of a single witness, if positive and credible, is sufficient to convict, even though it is contradicted by the defendant. (*People v. Lampton* (1982), 108 Ill. App. 3d 41, 438 N.E.2d 915.) Defendant here claims that the victim's testimony is incredible because of the discrepancy between certain aspects of her trial testimony and the information provided in the initial police report of the incident. We note, initially, that the officer who made out the preliminary report described it as a "barebone data report." We further note that the fact that the report does not mention that the assailant had a moustache, a fact upon which defendant heavily relies, is not by itself sufficient to create a reasonable doubt as to his guilt. Where the identification of the accused is positive, precise accuracy in describing facial characteristics does not create a reasonable doubt as to the defendant's guilt. (*People v. Egan* (1978), 65 Ill. App. 3d 501, 382 N.E.2d 477.) Here, the victim identified defendant on three separate

occasions: from a photo array, in a lineup, and at trial. Moreover, the general physical description she provided of defendant was essentially accurate and detailed, including the type and color of the clothing he wore and his wristwatch. She had ample time to observe defendant in well-lighted conditions. In addition, defendant admits being at the location of the incident at the time in question. He was also identified as being at the location by several other witnesses, one of whom testified that defendant did leave the apartment at 809 West Oakdale around the time the crime was committed.

Defendant attaches great significance to the fact that John O'Brien walked past the victim's car at the time the attack was in progress without noticing or hearing anything. The State offers the plausible explanation that the attack may not have occurred at the very moment O'Brien walked by the victim's car; or, that the attack may have been taking place, but O'Brien may not have seen or heard anything. Either of these explanations is reasonable and does not render the victim's testimony incredible.

■ In light of the victim's positive and detailed identification of defendant, whom she observed at close range in well-lighted conditions, and the other testimony adduced at trial, which places defendant at the scene of the crime and shows that he had the opportunity to commit the crime during a crucial interval that corresponds to the time the incident occurred, we find that the jury had ample evidence to convict defendant of unlawful restraint.

### III

■■ ■ Defendant's next contention on appeal is that he was denied a fair trial due to the prosecutor's improper closing argument. Defendant first complains of three comments made by the prosecutor concerning the failure of an alibi witness to testify at trial. The propriety of a prosecutor's comment on defendant's failure to call an alibi witness was addressed by our supreme court in *People v. Williams* (1968), 40 Ill. 2d 522, 240 N.E.2d 645, *cert. denied* (1969), 393 U.S. 1123, 22 L. Ed. 2d 129, 89 S. Ct. 1004, in which it stated that

"though failure to call a witness or produce evidence may not be relied on as substantial proof of the charge, nonetheless, if other evidence tends to prove the guilt of a defendant and he fails to bring in evidence within his control in explanation or refutation, his omission to do so is a circumstance entitled to some weight in the minds of the jury, and, as such, is a legitimate subject of comment by the prosecution." (40 Ill. 2d 522, 529, 240 N.E.2d 645, 649.)

Moreover, when alibi witnesses, such as the witness in the present case, are injected into the case by defendant, they are deemed unavailable to the prosecution and comment on the failure of such witnesses to testify is proper. *People v. Gaines* (1982), 104 Ill. App. 3d 974, 433 N.E.2d 970.

Applying the applicable law to the prosecutor's comments in the instant case, we find that the several comments objected to by defendant regarding his failure to call a certain alibi witness were not error.

■ Defendant also claims as error the prosecutor's comment made in rebuttal closing argument, that "the presumption of innocence was pricked and it broke by defendant and his witnesses being caught in a series of lies." Defendant claims that this comment is a complete misstatement of Illinois Pattern Jury Instruction, Criminal, No. 2.03 (2d ed. 1971), which instructs the jury on the presumption of innocence, reasonable doubt, and the burden of proof generally.

It is clear from the record that the prosecutor's remark about the presumption of innocence being pricked and broken was in response to defense counsel's analogy of the presumption as a "bubble over the head of any defendant." Where counsel for the accused, in closing argument to the jury, invites response to counter his own analogy, he cannot complain on appeal that the response is improper. (*People v. Hicks* (1981), 101 Ill. App. 3d 238, 427 N.E.2d 1328.) Here, defense counsel invited the response that countered his analogy, and he cannot now on appeal claim that defendant was prejudiced thereby.

■ The last prosecutorial comment defendant claims as error is that part of the closing argument when the prosecutor stated that "it's the State's Attorney's job if we can clear somebody of a crime we don't prosecute. I mean we just don't run over people." Defendant claims that this comment denigrated the presumption of innocence and the State's burden, as well as being an interjection by the prosecutor of his own testimony. We find no merit in this contention.

The objected-to comment in the instant case is similar to a comment made in *People v. Garcia* (1981), 95 Ill. App. 3d 792, 801, 420 N.E.2d 482, 489, in which the prosecutor told the jury during closing argument that the State's Attorneys did not need to "trump up cases that didn't exist to keep their jobs." The court in *Garcia* found the comment to be proper because invited by the defense attorney's remarks in closing arguments insinuating that certain witnesses were liars. Here, as in *Garcia*, the defense in its closing argument suggested that the State was attempting to convince the jury that as soon as the defendant witnesses took the stand they became "great liars, they be-

come a Pinocchio." In light of these remarks by defense counsel, we find the prosecutor's comment to be invited and not error.

## IV

Defendant next claims that the trial judge committed reversible error by giving the jury a *Prim* instruction prematurely, prior to its becoming deadlocked. The State maintains that the trial court's decision to give the *Prim* instruction was a proper exercise of its discretion. We agree with the State.

The trial court has great latitude as to when a *Prim* instruction should be given. (*People v. Cowan* (1984), 122 Ill. App. 3d 394, 461 N.E.2d 605, *aff'd* (1985), 105 Ill. 2d 324.) The test is whether, upon examination of all the facts, the language used in the instruction coerced or interfered with the deliberation of the jurors to the prejudice of the defendant or hastened the verdict. (*People v. Iverson* (1973), 9 Ill. App. 3d 706, 292 N.E.2d 908.) There is less danger of coercion when the instruction is given to a jury which has not reached a deadlock. *People v. Wilson* (1976), 37 Ill. App. 3d 560, 346 N.E.2d 161.

Based on the language of the instruction given to the jury in the instant case, the fact that the jury deliberated three additional hours after the *Prim* instruction was given, and the fact that the jury was not deadlocked at the time the instruction was given, we find that the giving of the instruction here was neither premature nor coercive. Neither the time interval after which the instruction was given, 8½ hours, nor the foreman's indication that the jury was making progress towards a verdict negates this finding. *People v. Canale* (1972), 52 Ill. 2d 107, 285 N.E.2d 133 (supplemental instruction given after seven hours of deliberations and foreman's statement that a verdict could be reached in a reasonable period of time).

## V

Defendant's final contention on appeal is that the trial judge abused his discretion by imposing a three-year sentence, the statutory maximum, for unlawful restraint and by not considering defendant's rehabilitative potential in light of the testimony adduced on his behalf. The State maintains that the trial judge considered the arguments presented in aggravation and mitigation and that the sentence, which falls within statutory limits (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(7)), was a proper exercise of the trial court's discretion. We find merit in the State's position.

The Illinois Supreme Court has repeatedly emphasized the undesirability of a reviewing court's substituting its judgment or prefer-

ence as to punishment for that of the sentencing court, noting that the trial judge is ordinarily best situated to tailor a sentence to the needs of the case. (*People v. Hicks* (1984), 101 Ill. 2d 366, 462 N.E.2d 473; *People v. Pittman* (1982), 93 Ill. 2d 169, 442 N.E.2d 836; *People v. Vance* (1979), 76 Ill. 2d 171, 390 N.E.2d 867.) The trial judge's decisions in regards to sentencing are entitled to great deference and weight, and absent an abuse of discretion by the trial court, a sentence may not be altered upon review. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

To modify a sentence within the statutory limits, it must appear to an appellate court that the sentence imposed is a clear departure from the spirit and purpose of the fundamental law and the requirement of the constitution that the sentence be proportionate to the nature of the offense and measure possibilities for rehabilitation. (*People v. Henderson* (1977), 45 Ill. App. 3d 798, 359 N.E.2d 909.) A sentence appealed from is presumed to be proper, and only where such presumption has been rebutted by an affirmative showing of error will a reviewing court find it to be an abuse of discretion. (*People v. Spinks* (1980), 80 Ill. App. 3d 1096, 400 N.E.2d 634.) While we note the correctness of defendant's assertion that a sentencing judge must give adequate consideration to a defendant's rehabilitative potential as well as to the seriousness of the offense, we find that here, defendant has failed to rebut the presumption of propriety afforded to the sentence imposed by the trial court.

Where evidence is offered in mitigation, the sentencing judge will be presumed to have considered it unless there is some statement in the record, aside from the sentence imposed, that would tend to indicate otherwise. (*People v. Goodman* (1983), 116 Ill. App. 3d 125, 451 N.E.2d 607.) Here, at the sentencing hearing, defense counsel set forth all of the factors in defendant's favor, factors that sufficiently provided the trial court with a basis upon which to assess defendant's rehabilitative potential. In addition, the court heard lengthy testimony from various defense witnesses as to defendant's character and reputation in the working community. The trial court's awareness and consideration of this testimony and these mitigating factors was made manifest by its comments that it considered "the evidence received in the trial of the case and *** the matters offered by the defendant in mitigation."

Defendant points to no statement in the record that tends to indicate that the trial court failed to consider the matters offered in mitigation. Defendant merely points out various specific factors that the trial court failed to enunciate. A trial judge need not,

however, state every factor he considered in determining a defendant's sentence. (*People v. Gornick* (1982), 107 Ill. App. 3d 505, 437 N.E.2d 892.) Defendant has therefore failed to rebut the presumption that the trial court failed to consider the evidence in mitigation before it.

Moreover, we are unconvinced by defendant's argument that the trial court committed error by considering defendant to be guilty of aggravated battery. The court's statement that defendant committed a "serious battery" on the victim refers not, as is clear from the context of the statement, to the crime of aggravated battery but rather to the court's finding that the victim "sustained serious trauma as a result of the wrongful conduct of the defendant." The degree of harm caused to the victim is, of course, a proper factor for consideration in sentencing a defendant. (*People v. Bone* (1982), 103 Ill. App. 3d 1066, 432 N.E.2d 329; Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3.2.) We therefore find that the court's allusion to a serious battery does not constitute an affirmative showing of error.

For all of the above reasons, we affirm the decision of the circuit court.

Affirmed.

JIGANTI, P.J., and JOHNSON, J., concur.