THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KERRY SMITH, Defendant-Appellant.

First District (1st Division)   No. 85—3496

Opinion filed January 11, 1988.

James H. Doherty, Public Defender, of Chicago (Alison J. Norwood, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., John A. Gasiorowski, and Sharon K. Bachert-Bedford, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, the defendant Kerry Smith (a/k/a Kerry Jackson) was found guilty of aggravated battery, attempted murder and armed robbery of Homer Rouse. He was subsequently sentenced to serve concurrent extended terms of 55 years for attempted murder and 55 years for armed robbery. The trial court reasoned that this sentence was imposed due to the viciousness of the crime and because the victim was over the age of 60. The defense counsel filed a motion for a new trial objecting to the in-court identification and the improper comments of the prosecution regarding the defendant's failure to testify. The motion was denied by the trial court and the defendant filed this appeal.

In this appeal the defendant contends that: (1) he was not proven guilty of attempted murder and armed robbery beyond a reasonable doubt; (2) the trial court abused its discretion in allowing the prosecution to elicit testimony that the complainant had made prior consistent statements of the defendant's guilt to third parties; (3) his constitutional right to remain silent was violated; and (4) the concurrent 55–year extended-term sentences were excessive.

Homer Rouse, the victim, testified that during the morning of April 2, 1983, he walked to the currency exchange on 61st Street to pay a utility bill. On his way back home he encountered the defendant, Kerry Jackson (a/k/a Kerry Smith). Mr. Rouse had known the defendant for two years prior to the April 2, 1983, attack and the defendant actually lived with Mr. Rouse for approximately two months prior to April 2, 1983.

Subsequent to the street encounter, the defendant went to Mr. Rouse's apartment and was allowed in by Mr. Rouse. Mr. Rouse lay down and went to sleep. However, he was awakened by the defendant tying his legs together with an extension cord. While Mr. Rouse was cutting the cord from his legs, the defendant asked him if he had any money. Mr. Rouse replied that he had $80 and proceeded into the liv-

ing room. The defendant followed Mr. Rouse into the living room, ripped his pocket and took the money. The defendant then pulled out a six–inch scalpel-edged knife and stabbed Mr. Rouse repeatedly in the stomach, head, arms, and cut him in the eye, which resulted in the loss of vision in that eye.

Mr. Rouse "blacked out" and upon awakening, he discovered that his neck and hands were tied. Since he was unable to stand upright, he crawled across the hall to where the janitor, Alonzo DeLoach, lived and bumped his head against the door until it was opened. When Mr. DeLoach came to the door he asked Mr. Rouse, "What happened?" and "Who did this?" Mr. Rouse responded that "Kerry did it." Mr. Rouse further testified that he told the police when they arrived that Kerry Jackson robbed and stabbed him.

Alonzo DeLoach, the janitor in Mr. Rouse's building, testified that he lived across the hall from Mr. Rouse and that Kerry Smith lived with Mr. Rouse for approximately two months. On April 2, 1983, Mr. Rouse bumped against Mr. DeLoach's door and when the door was opened Mr. Rouse was bleeding and tied up. When he asked Mr. Rouse, "Who did this?" he responded, "Kerry Smith."

Officer Cleveland also testified that upon arrival to the victim's apartment, when he asked Mr. Rouse what had happened, he responded that "Kerry Jackson did this to me."

Mr. Rouse was taken to Jackson Park Hospital and transferred to Cook County Hospital, where he stayed approximately two weeks. Upon release, he was taken to a nursing home and he subsequently moved to Indianapolis, Indiana.

The defendant contends that the prosecution failed to sustain its burden of proving him guilty of attempted murder and armed robbery beyond a reasonable doubt since the in-court identification was prompted by the prosecutor. The defendant further contends that "the assistant State's Attorney practically pointed to the defendant" when Mr. Rouse was having difficulty identifying his attacker in the courtroom. Moreover, in response to the defense counsel's objection to these actions, the trial judge stated, "The jury saw what happened. The record may reflect an in-court identification of the defendant."

The State maintains that the defendant was correctly identified and proven guilty beyond a reasonable doubt. The admissibility of identification testimony is determined by its reliability. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 53 L. Ed. 2d 140, 154, 97 S. Ct. 2243, 2253.) Reliability is determined by, "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the

level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." 432 U.S. at 114, 53 L. Ed. 2d at 154, 97 S. Ct. at 2253, citing *Neil v. Biggers* (1972), 409 U.S. 188, 199-200, 34 L. Ed. 2d 401, 411-12, 93 S. Ct. 375, 382-83.

■■ ■ The most important factor in evaluating the reliability of an in-court identification is the victim's opportunity to view the perpetrator. (*People v. Moore* (1983), 115 Ill. App. 3d 266, 270, 450 N.E.2d 855.) Moreover, a criminal conviction will not be set aside unless the evidence is so unreasonable, improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Shum* (1987), 117 Ill. 2d 317, 356, 512 N.E.2d 1183; *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.

■■ ■ It is the responsibility of the trier of fact to determine the credibility of witnesses and draw conclusions after reviewing all of the evidence. (*People v. Titone* (1986), 115 Ill. 2d 413, 422, 505 N.E.2d 300; *People v. Cheek* (1982), 93 Ill. 2d 82, 94, 442 N.E.2d 877.) Moreover, a reviewing court will not substitute its judgment for that of the trier of fact regarding the credibility of the witness and the weight of the evidence. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313.

The United States Supreme Court succinctly expounded the role of the jury in *Manson v. Brathwaite*. The Court reasoned that, if there was a defect in the in-court identification, the defect goes to the weight and not to substance. (*Manson v. Brathwaite* (1977), 432 U.S. 98, 117, 53 L. Ed. 2d 140, 155, 97 S. Ct. 2243, 2254.) "We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." (432 U.S. at 116, 53 L. Ed. 2d at 155, 97 S. Ct. at 2254.) In the case at bar, the jury saw the identification and deemed it to be credible.

■ Whether the defendant was denied due process of law based on suggestive identification procedures must be determined based on the "totality of the circumstances." (*Neil v. Biggers* (1972), 409 U.S. 188, 196, 34 L. Ed. 2d 401, 409, 93 S. Ct. 375, 380-81.) The central question is whether, under the "totality of the circumstances," the in-court identification was reliable even if it was suggestive, since it is the likelihood of misidentification which violates a defendant's right to due process. 409 U.S. at 198-99, 34 L. Ed. 2d at 410-11, 93 S. Ct. at 381-82.

In the instant case, the victim was not a casual observer. He knew

the defendant for two years and opened his dwelling to the defendant. Moreover, the victim had an adequate opportunity to view the defendant during the attack. Although the victim had been tied up, robbed, stabbed in the stomach, head, arm and eye, he crawled across the hall and told his neighbor that "Kerry did it."

Mr. Rouse experienced difficulty identifying the defendant during the trial because as a result of the attack he was blind in one eye and needed glasses to see. The jury took into consideration the victim's diminished eyesight, weighed the evidence, and found the identification to be credible.

■ Moreover, any discrepancies in the identification of the defendant or any weaknesses in the manner in which identification is made only affects the credibility of the witness and the weight to be given his testimony, which is the responsibility of the trier of fact. *People v. Sanders* (1976), 38 Ill. App. 3d 473, 479, 348 N.E.2d 229.

■ Based on the "totality of the circumstances" the in-court identification was reliable. From our review of the record we find no substantial likelihood of misidentification, and the evidence was sufficient to find a defendant guilty of attempted murder and armed robbery beyond a reasonable doubt.

The defendant next argues that reversible error occurred when the trial court admitted the victim's prior consistent statement to Alonzo DeLoach and Officer Cleveland that "Kerry Jackson did it" where the defendant's guilt or innocence depended on the credibility of the victim. We do not agree.

■ The general rule is that a witness may not testify as to statements he/she made prior to trial for purposes of corroborating his testimony given at trial except to rebut a charge or inference that the witness is motivated to testify falsely or that his in-court testimony is of recent fabrication. *People v. Emerson* (1983), 97 Ill. 2d 487, 501, 455 N.E.2d 41; *People v. Rogers* (1980), 81 Ill. 2d 571, 578, 411 N.E.2d 223; *People v. Clark* (1972), 52 Ill. 2d 374, 389, 288 N.E.2d 363.) However, this general rule does not apply to statements of identification. *People v. Shum* (1987), 117 Ill. 2d 317, 342, 512 N.E.2d 1183; *People v. Rogers* (1980), 81 Ill. 2d 571, 578, 411 N.E.2d 223.

■ During direct examination, the State elicited testimony from Homer Rouse, Alonzo DeLoach and Officer Cleveland that Kerry Jackson committed the attack. Homer Rouse's statement was a statement of identification and was, therefore, admissible. Regarding Alonzo DeLoach's and Officer Cleveland's statements, the Illinois Supreme Court has provided guidelines to govern the admissibility of

out-of-court identifications.

If the complainant testifies that he previously identified the defendant and his veracity is tested by cross-examination, the reason for excluding the third person's testimony has been removed, and the third person should be allowed to testify that he heard or saw the complainant identify the defendant because both the complainant and the third person would be subject to cross-examination regarding the out-of-court identification. *People v. Rogers* (1980), 81 Ill. 2d 571, 579, 411 N.E.2d 223.

■■ ■ The evidence of the out-of-court identification by both the complainant and the third person should be admissible only to corroborate the in-court identification and not as substantive evidence. (*People v. Rogers* (1980), 81 Ill. 2d 571, 579, 411 N.E.2d 223.) However, before the third person is allowed to testify regarding the complainant's identification of the defendant, the complainant should first testify regarding his out-of-court identification. 81 Ill. 2d at 579.

In the instant case, Homer Rouse's statement was one of identification and, as previously noted, the general rule that a witness may not testify as to statements made out-of-court for purposes of corroborating their testimony given at trial does not apply to statements of identification. *People v. Shum* (1987), 117 Ill. 2d 317, 342, 512 N.E.2d 1183; *People v. Rogers* (1980), 81 Ill. 2d 571, 578, 411 N.E.2d 223.

■■ Evidence of the out-of-court identification of the defendant by the complainant, Mr. DeLoach, and Officer Cleveland will be admissible only to corroborate the in-court identification since the complainant and other witnesses were subjected to an extensive cross-examination. Moreover, Mr. DeLoach and Officer Cleveland testified regarding the prior consistent statements only after the defense counsel questioned Mr. Rouse about the prior consistent out-of-court statements he made to the other witnesses. Therefore, these statements were properly admitted, since they clearly adhere to the guidelines set forth in *Rogers*.

The defendant further contends that his constitutional right to remain silent was violated when the assistant State's Attorney repeatedly commented during closing argument on his failure to testify. Specifically, the assistant State's Attorney commented that the victim made prior consistent statements, which were not refuted by the evidence, and that there were no inconsistencies in the testimony presented by the victim, Mr. DeLoach and Officer Cleveland.

The State argues that any comments made during closing arguments were directed toward the uncontroverted nature of the evidence, not the defendant's failure to testify.

■■■ We do not agree with the defendant's contention. The prosecutor is allowed a great deal of latitude during closing arguments. (*People v. Shum* (1987), 117 Ill. 2d 317, 341, 512 N.E.2d 1183; *People v. Dominique* (1980), 86 Ill. App. 3d 794, 806, 408 N.E.2d 280.) In determining whether the defendant's right to remain silent has been violated, we must assess whether the reference was intended or calculated to direct the jury's attention to the defendant's failure to testify. (*People v. Dixon* (1982), 91 Ill. 2d 346, 350, 438 N.E.2d 180; *People v. Hopkins* (1972), 52 Ill. 2d 1, 6, 284 N.E.2d 283.) A prosecutor may comment on the uncontroverted nature of the evidence even though the defendant is the only person who could have contradicted the evidence. (*People v. Hopkins* (1972), 52 Ill. 2d 1, 6, 284 N.E.2d 283; *People v. Mills* (1968), 40 Ill. 2d 4, 8-9, 237 N.E.2d 697.) By commenting on the uncontroverted nature of the evidence, the remark only serves to emphasize the strength of the State's case. *People v. Bolden* (1987), 152 Ill. App. 3d 631, 639, 504 N.E.2d 835; *People v. Bryant* (1983), 94 Ill. 2d 514, 524, 447 N.E.2d 301.

■■ The comments by the prosecutor were a proper reference to facts that were properly admitted into evidence. As previously discussed, the prior consistent statements of the witnesses were admissible to corroborate the in-court identification, and statements based upon facts in evidence are within the bounds of proper argument. (*People v. Shum* (1987), 117 Ill. 2d 317, 341, 512 N.E.2d 1183; *People v. Dominique* (1980), 86 Ill. App. 3d 794, 806, 408 N.E.2d 280.) "The character and scope of argument to the jury is left very largely to the trial court, and every reasonable presumption must be indulged in that the trial judge *** properly exercised the discretion vested in him." (*People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324.) We cannot find an abuse of discretion by the trial court in allowing the prosecution to make the complained-of remarks. The prosecutor may comment on the uncontroverted nature of the evidence to demonstrate the absence of defense evidence rather than to call attention to the defendant's failure to testify. (*People v. Dixon* (1982), 91 Ill. 2d 346, 350, 438 N.E.2d 180.) Moreover, even if the prosecutor's comments were improper, the improper argument generally does not constitute reversible error unless the argument resulted in substantial prejudice to the accused. *People v. Shum* (1987), 117 Ill. 2d 317, 347, 512 N.E.2d 1183; *People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200.

■■ In light of the overwhelming evidence presented during the trial, and the court's admonition to the jury that what is said by lawyers during arguments is not evidence, we cannot say that the com-

ments resulted in substantial prejudice to the accused. Nor can we say that the verdict would have been different but for the prosecutor's comments. We see no error in the prosecutor's comments.

The defendant finally argues that his concurrent 55–year extended-term sentence for attempted murder and armed robbery are excessive considering he was 34 years old at the time of sentencing with no prior convictions. An extended-term sentence may be imposed where the trial court finds that the offender is at least 17 years old on the date the crime was committed and "the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty; or when a defendant is convicted of any felony committed against *** a person 60 years of age or older at the time of the offense." (Ill. Rev. Stat. 1983, ch. 38, pars. 1005–5–3.2(b)(2), (3)(ii).) Attempted murder and armed robbery are both Class X felonies. (Ill. Rev. Stat. 1983, ch. 38, pars. 8–4(c)(1), 18–2(b).) Under the extended term, the sentence for a Class X felony shall not be less than 30 years nor more than 60 years. Ill. Rev. Stat. 1983, ch. 38, par. 1005–8–2.

The defendant qualified for the extended-term sentence since the victim was 68 years old at the time the offense was committed. Moreover, the offense consisted of heinous and brutal acts, *i.e.*, stabbing the victim in the head, arms, stomach, eye and leaving him for dead. Before imposing the sentence, the court stated that "the considerable amount of damage done to this elderly gentlemen, cutting him in the eye, stabbing him in the stomach such that his guts were partially protruding, according to the doctor, and other evidence was just [a] very strong showing [of the] tremendous viciousness and heinousness and brutality on the part of the defendant in imposing this tremendous damage to the victim here, Mr. Rouse."

■■ ■ Although, pursuant to Supreme Court Rule 615(b)(4), we have discretionary power to reduce an excessive sentence (107 Ill. 2d R. 615(b)(4)), the trial judge is in a superior position to consider and determine the punishment to be imposed rather than a reviewing court. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) Moreover, it is well settled that "[t]he trial judge's decisions in regards to sentencing are entitled to great deference and weight, and absent an abuse of discretion by the trial court, a sentence may not be altered upon review." *People v. Plantinga* (1985), 132 Ill. App. 3d 512, 522, 477 N.E.2d 1299, 1306; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.

■■ The trial judge gave serious consideration to factors presented in aggravation and mitigation, and noting the brutal and hei-

nous nature of the crime, we do not believe the trial judge abused his discretion in imposing the extended-term sentence. We find no error which requires reversal. Accordingly, the judgment of the circuit court is affirmed.

Judgment affirmed.

CAMPBELL, P.J., and QUINLAN, J., concur.