THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGELO WILLIAMS *et al.*, Defendants-Appellants.

First District (5th Division) Nos. 1—88—1048, 1—88—1049 cons.

Opinion filed May 15, 1992.—Rehearing denied June 12, 1992.

Randolph N. Stone, Public Defender, of Chicago (Mary C. Arundel, Assistant Public Defender, of counsel), for appellant Angelo Williams.

Michael J. Pelletier and Debra R. Salinger, both of State Appellate Defender's Office, of Chicago, for appellant Oscar Clay.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

A jury found defendants Angelo Williams and Oscar Clay guilty of murder and concealment of homicidal death. The court then merged the convictions and sentenced each defendant to a term of 40 years' imprisonment.

On appeal, both defendants contend that gang-related testimony and argument was prejudicial error; that the State failed to prove them guilty beyond a reasonable doubt; that it was error to permit a bloodstained rug to go to the jury room; that they were denied effective assistance of counsel; that the trial court failed to adequately question the venire regarding the principle that a defendant need not testify; that numerous prosecutorial comments in closing argument were prejudicial; that the cumulative effect of the errors denied them their right to a fair trial; and that their sentences are excessive.

Defendant Clay alone also contends that the mittimus showing two counts of murder must be corrected and a new sentencing hearing held; that it was error to permit certain testimony at his sentenc-

ing hearing; and that the State improperly elicited and argued the prior consistent statements of an eyewitness.

At trial, Arthur Cole, a postman, testified for the State that while on his postal route on June 19, 1987, at 9 a.m., he discovered the body of the victim, Aaron Buckles, in an industrial area in Chicago.

David Betz, a Chicago police officer, responded to Cole's call and observed the victim's body, clothed in a blue baseball T-shirt, blue pants and white gym shoes.

The parties stipulated that Dr. Robert J. Stein, a forensic pathologist, would testify that on June 20, 1987, he examined the victim's body. The cause of death was a gunshot wound to the face. Deposits of gunpowder around the wound indicated the gun was fired at close range to the victim's face.

Mary Siwak, a Chicago police officer, testified for the State that she was a member of the department's gang crimes unit. Siwak stated that the Black Gangster Disciples were active in the Cabrini Green area. Buckles, a member of that gang, had been providing Siwak with information about gang activity for approximately six months prior to his murder.

Monica Moore testified for the State that on the afternoon of June 18, 1987, she visited a friend, Bridgette McCall, at Cabrini Green. After playing cards for awhile, they went downstairs to another apartment in that building, where McCall planned to buy marijuana. A woman answered the door. In the apartment living room, Moore saw Buckles, whom she knew casually. Buckles wore a blue shirt, blue pants and white gym shoes. Moore also saw both defendants. Moore had known Williams for four years, and she went to grammar school with Clay. A fourth man, whom Moore did not know, was also in the apartment.

Moore testified further that defendants, Buckles and the fourth man went into the back bedroom. At one point, Moore walked toward the bathroom, which was located across from the back bedroom. Moore heard defendant Clay twice call Buckles a "stool pigeon." Buckles denied the accusation. As Moore left the bathroom and passed the bedroom, she looked in and saw defendant Clay holding a shotgun and defendant Williams pointing a handgun at Buckles. Moore watched as Clay said that "Aaron's ass was out," held the gun up to Buckles' face, and fired the shotgun. Moore ran to the front of the apartment. As she and McCall tried to leave, Clay and the fourth man came into the room and said the women could not leave.

Moore testified further that shortly thereafter, defendants carried the victim's body out of the bedroom, wrapped in a blanket. Clay told

Moore and McCall that if they did not cooperate, he would do the same thing to them that he had done to Buckles. With the women accompanying them, defendants carried the victim's body to a black four-door car parked outside the building. Moore had previously seen defendant Williams' brother, James Williams, driving the car. Defendants put the body in the trunk. The fourth man drove defendants and the women to an industrial area where defendants removed the victim's body from the trunk and left it on the ground. They drove back to Cabrini Green, where Clay threatened to kill Moore and her child if she said anything. Moore reported nothing to the police until October 1987, when they came to her apartment and asked her what had happened to Buckles. She had not previously reported the crime to the police because she was "afraid they was [sic] going to do me like they did Aaron Buckles."

Thaddeus Melko, a Chicago police department evidence technician, testified that on October 15, 1987, he searched a 1975 black four-door car. He removed pieces of carpeting from the trunk and gave them to the serology unit.

Christine Braun, a serologist with the police department, testified that she tested the pieces of carpet and found traces of human blood. Due to the condition of the carpet it was not possible to determine the blood type.

Thomas Ward, a Chicago police officer, testified that he knew both defendants were members of the Black Gangster Disciples gang. He was also aware that Buckles had been a police informant. Ward had been assigned to Cabrini Green for four years and his unit was particularly concerned with gang activities in the area. Ward had made over 300 gang-related arrests in the Cabrini Green area. He was familiar with the Black Gangster Disciples street gang.

Ward testified further that in the hierarchical structure of the Black Gangster Disciples, defendant Clay had the position of "enforcer." Defendant Clay had tattoos of symbols commonly used by that street gang. Within the gang, defendant Williams had the position of a "general." Defendant Williams also had a tattoo of a common Disciples symbol, and a tattoo of the letters "BGD." Ward testified that he knew defendants were currently members of the gang because of the tattoos, defendants' own admissions made to Ward, and information given to Ward by informants.

Ward testified further that the police department kept "gang cards" on all known gang members, and had cards on defendants. Williams' card was made out by Ward on August 7, 1987. Clay's card

was made out by Ward on November 28, 1984. The cards included the information regarding defendants' gang tattoos.

Defendants offered no witnesses.

The jury found defendants guilty of murder and concealment of a homicidal death.

## OPINION

### I. GANG-RELATED EVIDENCE

Both defendants contend that the trial court erred in admitting evidence of gang membership and gang activity.

Evidence of gang membership and activity is admissible where there is sufficient proof that such evidence is related to the crime charged. (*People v. Hairston* (1970), 46 Ill. 2d 348, 372, 263 N.E.2d 840; *People v. Anderson* (1987), 153 Ill. App. 3d 542, 549, 505 N.E.2d 1303.) Evidence of gang membership may be used to show motive for the commission of the offense, thus tending to identify a particular person as the offender. *People v. Rivera* (1986), 145 Ill. App. 3d 609, 495 N.E.2d 1088; *People v. Orr* (1986), 149 Ill. App. 3d 348, 500 N.E.2d 665.

Initially, defense counsel made a pretrial motion *in limine* to exclude gang-related testimony. The court first permitted an examination of defendants' bodies for gang insignia. The court later denied the motion *in limine,* noting the significance of Officer Siwak's testimony that the victim was a police informant on gang activity. "[T]hat is the tie-in, that he was in fact what *** the defendant Williams accused him of being ***."

Recently, our supreme court addressed the issue of admitting gang-related evidence in *People v. Gonzalez* (1991), 142 Ill. 2d 481, 568 N.E.2d 864. The court recited the general rule that gang-related evidence is admissible if it is relevant to an issue in dispute and its probative value is not substantially outweighed by its prejudicial effect. (*People v. Gonzalez,* 142 Ill. 2d at 487.) "Relevant evidence is defined as evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." *People v. Gonzalez,* 142 Ill. 2d at 487-88.

In *Gonzalez,* the court found the trial court did not err in weighing the probative value and prejudicial effect of the gang-related evidence. That evidence was relevant to the extent that it strengthened the victim's identification, since the victim told the police he believed his assailant was a member of a certain gang. The evidence was also

relevant to the investigative steps taken by the police prior to defendant's arrest, since the police gave the victim a book containing photographs of Spanish Cobra gang members. *People v. Gonzalez*, 142 Ill. 2d at 487-88.

■ In the present case the gang-related evidence was relevant to the extent that it explained defendants' motive for committing the murder. Moore testified that she heard defendant Clay call Buckles a "stool pigeon," and heard Clay say that "Aaron's ass was out." The accusation of "stool pigeon" reported by Moore corroboratively interfaced with the testimony of Officer Siwak, who stated that Buckles, the victim, was a member of the Black Gangster Disciples and had been providing Siwak with information about gang activity for approximately six months prior to his murder. Siwak also testified that the Black Gangster Disciples were active in the Cabrini Green area, which is where Moore testified the murder occurred. Furthermore, Officer Ward testified that he knew defendants were members of the gang because of the tattoos, defendants' own admissions, and information given to Ward by informants. See *People v. Buchanan* (1991), 211 Ill. App. 3d 305, 311, 570 N.E.2d 344 (court held that gang-related evidence was properly admitted; police officer who was gang crime specialist testified that he knew defendant and that defendant had admitted membership in a certain gang numerous times).

Thus, defendants' contention that the State overstepped the limits of admissible gang-related evidence by testifying to defendants' gang membership must fail. The evidence of defendants' gang membership provided the motive for shooting Buckles after informing the victim that he was a "stool pigeon."

■ Defendant Williams also argues that Ward improperly testified that the police department kept "gang cards" on all known gang members and had cards on defendants. There should not have been a reference to gang cards since at best these cards would constitute hearsay because no foundation was laid to establish that they constituted a business record or fell within any other exception to the hearsay rule. Nevertheless, no hearsay objection was made to these gang card references. The contention is made by Williams, however, that references to these gang cards indirectly provided evidence of other crimes. Nothing in the record indicates that the gang cards were kept for the purpose of showing arrests or convictions. In fact, Ward specifically testified that the cards were never updated to include arrest information. The cards would be removed from the file if an individual were deceased or left the gang. Ward would receive information from his street informants regarding changes in gang membership immedi-

ately or soon after the change occurred. Thus, there was no testimony that the cards in any way indicated that the gang member had committed crimes. See *People v. Gonzalez*, 142 Ill. 2d at 489 (trial court properly permitted testimony that victim identified defendant from a police photograph book of gang members; to delete the reference to gangs would improperly "lead the jury to believe that the victim identified the defendant from a police book containing photographs of individuals with prior arrests"); *People v. Buchanan*, 211 Ill. App. 3d 305, 570 N.E.2d 344 (finding defendant was not prejudiced by admission of police photograph book containing his picture among those of other gang members; relevant to identification of defendant); *People v. Harrison* (1982), 106 Ill. App. 3d 341, 435 N.E.2d 1211 (finding it was not error to admit photographic evidence which was imprinted with neither the name of the police department nor prior dates).

Defendants rely on *People v. Cruz* (1987), 164 Ill. App. 3d 802, 518 N.E.2d 320, where the court reversed a conviction because of the State's failure to establish that defendant was a member of the gang at the time of the shooting. At trial, the State showed a film entitled "Street Wars" in an attempt to impeach defendant's testimony that at the time of the shooting, he was not a member of a street gang. The film, taken several months before the murder of which defendant was accused, showed defendant and other men being searched by police while a commentator described, in a voice-over, gang activity and the use of guns. The film was taken three months prior to the shooting, and thus the court found it was not relevant and was highly prejudicial. In contrast, here the police officer testified that defendants were members of the gang at the time of the murders. Nothing in the present case was even remotely comparable to the film shown in *Cruz*, which simultaneously depicted defendant being searched by police, a victim being taken away on a stretcher in the background, and a commentator reporting that "[w]ar between rival street gangs [*sic*] of torture and revenge adds up to an escalating body count of gang members and people who get caught up in their crossfire." (*People v. Cruz*, 164 Ill. App. 3d at 811. See *People v. Buchanan*, 211 Ill. App. 3d at 322 (distinguishing *Cruz*).) Here, the reference to defendants' gang card inclusion was at best casual and bland. It would have been harmless error even if objected to on hearsay grounds. However, to the extent it was not objected to, there was no error in its admission.

We conclude that the gang-related evidence here was sufficiently reliable and was sufficiently related to the crimes charged to show motive. The trial court did not err in permitting this testimony.

## II. SUFFICIENCY OF EVIDENCE

Both defendants next contend that the State failed to prove them guilty beyond a reasonable doubt, arguing that there was weak corroborating evidence and that Moore's eyewitness testimony was undermined because she was an accomplice and a narcotic user.

On review, a conviction will not be reversed where, after viewing the evidence in the light most favorable to the State, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) The credibility of a witness is a question for the jury, because it is in the best position to observe the witness' demeanor. *People v. Jointer* (1989), 180 Ill. App. 3d 364, 370, 535 N.E.2d 1039.

■ In the present case, the evidence established that defendants were guilty beyond a reasonable doubt.

Moore offered credible eyewitness testimony of the murder, which the jury was entitled to believe. Her testimony was detailed and corroborated in many respects. Moore testified that defendants accused the victim of being a stool pigeon. This was corroborated by Officer Siwak, who testified that the victim was a police informant for six months prior to his murder. Moore testified that Clay held the shotgun to the victim's face and fired. This was corroborated by Dr. Stein's stipulated testimony that deposits of gunpowder around the wound and the lips indicated the gun was held close to the face when it was fired.

Moore also testified that the victim was wearing a blue shirt, blue pants and white gym shoes. This was corroborated by Officer Betz' testimony as to what the victim was wearing when the body was discovered. Moore also testified that the body was transported in a black four-door car. This was corroborated by the testimony of Officers Melko and Braun regarding the traces of human blood found on the car's trunk carpeting. Finally, Moore testified that defendants took the body to an industrial area, which is where the body was later discovered by Cole.

Defendants argue that Moore's testimony was insufficient to prove them guilty where she was an accomplice and a narcotics user. There is nothing in the record to indicate that Moore was an accomplice. She did not speak to defendants prior to the shooting; did not have a weapon; did not belong to the Disciples, and had no motive to kill Buckles. Moreover, the jury could reasonably believe Moore's testimony that she did not accompany defendants voluntarily when they disposed of the body.

In addition, there is no evidence that Moore was a narcotics user. The only evidence in the record concerning drugs was that McCall wanted to buy marijuana. Moore testified that she had never used marijuana.

We conclude that the State proved defendants guilty beyond a reasonable doubt.

### III. PHYSICAL EXHIBIT SENT TO JURY ROOM

Defendants next contend that it was error to submit the blood-stained trunk carpeting to the jury. Defendants failed to raise this issue in their motions for a new trial and thus have waived the question for purposes of review. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124; *People v. Allen* (1959), 17 Ill. 2d 55, 160 N.E.2d 818; *People v. Somerville* (1966), 71 Ill. App. 2d 381, 219 N.E.2d 116.) Notwithstanding this waiver, we will address the merits of the issue.

It is within the discretion of the trial court whether to allow evidence to be taken into the jury room, and we will not disturb that ruling absent a prejudicial abuse of discretion. (*People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183; *People v. Allen*, 17 Ill. 2d 55, 160 N.E.2d 818; *People v. Ciucci* (1956), 8 Ill. 2d 619, 137 N.E.2d 40, *aff'd* (1958), 356 U.S. 571, 2 L. Ed. 2d 983, 78 S. Ct. 839.) The trial court must balance the probative value against the possible prejudicial effect such evidence might have on the jury. *People v. Shum*, 117 Ill. 2d 317, 512 N.E.2d 1183.

Here, the bloodstained rug was relevant in that it was physical evidence tending to corroborate Moore's testimony regarding the transportation of the body in the trunk of the car. This supported the murder charge and the concealment charge. See *People v. Ciucci*, 8 Ill. 2d 619, 137 N.E.2d 40 (holding that trial court did not abuse its discretion in permitting portions of bloodstained sheet, pillowcase and pillow to go to jury room; exhibits were part of the *res gestae* in murder case); *People v. McKinnie* (1928), 328 Ill. 631, 160 N.E. 121 (not error to permit bloodstained sweater of defendant to go to jury room; no objection); *People v. Cimino* (1947), 330 Ill. App. 461, 71 N.E.2d 541 (abstract of opinion) (no abuse of discretion to permit torn and bloodstained clothing to be taken into jury room in assault with a deadly weapon case; no objection).

However, the rug alone was of little help to the jury. It only became meaningful when the police officers testified regarding the chain of custody and the chemical testing of the rug. While the rug itself was not of high probative value, any inflammatory effect of the sight

of these bloodstains would have been substantially diluted by the fact that, according to the forensic specialist, these bloodstains were hardly visible. The rug was brown, and was very dirty and soiled. In fact, because "[t]here were no large visible stains," she had to use a "stereo microscope [to] *** greatly enlarge the fibers in the carpeting." Defense counsel emphasized this fact in his closing argument to the jury: "And you heard the very nice lady who was a chemical analyst's expert testimony that the stains were so minute that she had to get a microscope to find the blood stains." We find that defendants were not prejudiced by permitting the rug to go to the jury room. See *People v. McKinnie*, 328 Ill. 631, 160 N.E. 121 (finding that defendant suffered no prejudice from trial court's decision to permit bloodstained sweater of defendant to go to jury room because it was neither helpful to jury nor prejudicial to defendant, and no objection was made).

Defendants rely on *People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525, where the court held it was prejudicial error to send the murder victim's bloodstained shirt into the jury room during a death penalty hearing. The court stated that the fact that defendant had participated in two or more murders, a prerequisite for his eligibility for the death penalty, was adequately established by other evidence. The admission of certified copies of defendant's convictions for, and his written statement describing, the earlier murders, was sufficient proof of those murders without the introduction of the bloodstained shirt. In addition, the shirt did not prove the disputed issue, *i.e.*, whether defendant shot the victim intentionally. (*People v. Davis*, 97 Ill. 2d at 29.) In contrast, here the bloodstained rug was the only physical evidence tending to prove that defendants transported the body in the car and concealed the homicide.

Defendants also rely on *People v. Elwell* (1977), 48 Ill. App. 3d 628, 362 N.E.2d 830, where a conviction was reversed because the trial court erred in admitting bloodstained clothing into evidence and sending that clothing to jury room. The present case differs from *People v. Elwell*. In *Elwell*, the court held that medical testimony provided objective, absolute proof of the fact that the victim died from a stab wound in the heart. The bloodstained clothing did not advance the proof in any meaningful way since it did not establish how the murder was committed or by whom. In contrast, here the bloodstained carpet from the car trunk offered strong corroboration of Moore's testimony that she witnessed defendants' placing the victim's body in the car trunk and transporting it. The bloodstained carpet

from the trunk, therefore, had probative value as corroboration of Moore's testimony.

Moreover, the evidence in *Elwell*, where the jury deliberated for several days, was far more closely balanced than in the present case. (See *People v. Green* (1991), 209 Ill. App. 3d 233, 582 N.E.2d 92 (distinguishing *Elwell*).) Here, if any error would have occurred, it would have been harmless in light of the overwhelming evidence from which the jury could reasonably conclude that defendants were guilty beyond a reasonable doubt. See *People v. Burrell* (1992), 228 Ill. App. 3d 133 (error to send bloodstained uniform of police officer into jury room since the prejudicial effect outweighed the probative value of showing intent to kill, but error was harmless due to overwhelming evidence of defendant's guilt); *People v. Lee* (1990), 194 Ill. App. 3d 595, 551 N.E.2d 300 (error to send vials of defendant's and the victim's blood to the jury room where jury could not discern the differences in the blood types, and the blood was not admitted to show that a crime occurred, or to identify defendant; however, error was harmless given the overwhelming evidence of guilt). See also *People v. Mays* (1988), 176 Ill. App. 3d 1027, 1040-41, 532 N.E.2d 843 (harmless error to permit guns to go into jury room where the evidence was overwhelming, and the guns "did not suggest evidence of prior crimes of defendant or have any significant prejudicial effect since the guns were not found in defendant's possession, in his immediate vicinity, or even in his home").

IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendants next argue that they were denied effective assistance of counsel where defense counsel failed to ask for an accomplice instruction on the basis of Moore's participation in the concealment of a homicidal death.

In order to establish ineffective assistance of counsel, defendant must show that counsel's conduct fell below an objective standard of competence; and that there is a reasonable probability that but for counsel's incompetence, the outcome of the trial would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052; *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.

■ Generally, the decision not to submit a specific jury instruction may be considered an exercise of discretion or a tactical decision which will not be considered evidence of incompetence merely because appellate counsel or the reviewing court would have acted differently. (*People v. Mitchell* (1984), 105 Ill. 2d 1, 473 N.E.2d 1270; *People v.*

*Jackson* (1990), 195 Ill. App. 3d 104, 119, 551 N.E.2d 1025.) Here, there was no evidence which might support a theory that Moore was an accomplice in the concealment of the victim's homicide.

In order to establish the offense of the concealment of a homicidal death, the evidence must show that defendant took affirmative steps to conceal the homicide with the specific purpose of preventing or delaying its discovery. (*People v. Kirkman* (1988), 170 Ill. App. 3d 106, 110, 522 N.E.2d 588.) Nothing in the record indicates Moore took such affirmative steps. On the contrary, the evidence is clear and undisputed that she accidentally witnessed the murder, then was forced to accompany defendants when they disposed of the body, and was threatened with her own death or the death of her infant if she did not cooperate.

We find, therefore, that defense counsel's decision not to request an accomplice instruction was a well-reasoned tactical decision.

Moreover, under the second prong of the *Strickland* test, an accomplice jury instruction would not have changed the outcome where the evidence of defendant's direct participation was overwhelming.

### V. *VOIR DIRE*

Defendants next contend that the trial court failed to sufficiently question the venire about the principle that defendants need not testify. In *People v. Zehr* (1984), 103 Ill. 2d 472, 477, 469 N.E.2d 1062, the court held that prior to jury selection the trial court must establish through *voir dire* of the jurors that (1) defendant is presumed innocent; (2) defendant has no burden to produce any evidence; (3) defendant does not have to testify; and (4) defendant must be proved guilty beyond a reasonable doubt.

Defendants failed to raise this issue during the *voir dire* or in their post-trial motions and thus have waived the issue for purposes of review. (*People v. Williams* (1991), 221 Ill. App. 3d 1061, 582 N.E.2d 1355 (and cases cited therein).) Defendants urge that we consider the issue under the plain error rule. However, that rule applies only where the evidence is closely balanced or the error is of such a magnitude that defendant was denied a fair trial. See *People v. Lucas* (1981), 88 Ill. 2d 245, 251, 430 N.E.2d 1091.

Here, the corroborated eyewitness testimony was overwhelming against defendants, and as shall be further discussed below, there is no indication that defendants were denied a fair trial. Moreover, the trial court did address the venire regarding the State's burden of proving a defendant guilty beyond a reasonable doubt; the principle that the defendant is presumed innocent; and the principle that the

defense does not have to prove innocence, has no evidentiary burden, and need not do anything if it so chooses. Thus, there was substantial compliance with the *Zehr* requirements. See *People v. Wilbur* (1992), 226 Ill. App. 3d 733.

VI. CLOSING ARGUMENTS

Defendants next contend that they were denied a fair trial because of nine areas of prejudicial comments made by the prosecutor in closing arguments.

Defendants failed to object to most of the comments they now raise on appeal. (*People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.) Nevertheless, we will address the prejudicial effect of those comments here. See *People v. Fort* (1958), 14 Ill. 2d 491, 153 N.E.2d 26.

The scope of closing argument is left largely to the trial court's discretion. (*People v. Shum*, 117 Ill. 2d at 341.) The prosecutor is allowed wide latitude in closing arguments. (*People v. Sheppard* (1990), 193 Ill. App. 3d 401, 549 N.E.2d 971.) The trial court's determination that closing arguments were proper will be upheld absent an abuse of that discretion. (*People v. Trask* (1988), 167 Ill. App. 3d 694, 712, 521 N.E.2d 1222.) Even improper remarks will not result in reversal unless they represent a material factor in the conviction. *People v. Sheppard*, 193 Ill. App. 3d 401, 541 N.E.2d 971.

■ The first group of comments defendants point to related to Moore's credibility:

"[W]hat she told you was the God's truth, the absolute truth and she told you what happened on the evening hours of June 18, 1987.

* * *

Her evidence, her testimony is uncontradicted and unrebutted. It is nothing but the truth.

* * *

You people can choose to do now what you want with the evidence that you have heard. What I suggest, Ladies and Gentlemen, the evidence that you heard was uncontradicted and unrebutted."

Defendants argue that these statements constituted an improper comment on defendants' failure to testify. More specifically, defendant Williams maintains that the "purpose of the foregoing arguments was to inform the jury that Mr. Williams did not take the stand in his defense and Mr. Williams, in not taking the stand, failed to present any evidence." Such an interpretation is too farfetched a reading of these arguments. Moreover, the prosecutor may characterize the State's evi-

dence as being uncontradicted even if defendant is the only person who could have offered contradictory testimony. See *People v. Bryant* (1983), 94 Ill. 2d 514, 523-24, 447 N.E.2d 301; *People v. Jones* (1965), 33 Ill. 2d 357, 211 N.E.2d 261; *People v. Norman* (1963), 28 Ill. 2d 77, 190 N.E.2d 819; *People v. Smith* (1988), 165 Ill. App. 3d 905, 913, 520 N.E.2d 841.

The second area of argument defendants point to involves the argument that Moore and her family had to move out of Cabrini Green. For example:

> "It meant leaving her neighborhood of 16 years. It meant her family leaving the neighborhood. It meant losing her friends, just to tell the truth."

Defendants argue that this statement was not supported by the evidence. At trial, Moore testified that she had been living in the Cabrini Green area for 16 years. She did not report the murder to the police due to fear that she and her son would be killed. When the police approached her several months later, in October 1987, she told them about the murder. Within two weeks, she moved from the Cabrini Green area. Moore testified on cross-examination:

> "Q. Do you live in the Cabrini Green area now?
> A. No.
> Q. When did you move?
> A. After I had to give them the statement.
> Q. When did you move, what date?
> A. About—about in the—about the end of October [1987].
> Q. You have four brothers, don't you?
> A. Yes.
> Q. Do they still live in the Cabrini Green Area?
> A. No.
> Q. Does your mother live in that area?
> A. No."

We find the prosecutor's closing argument was based on reasonable inferences flowing from the evidence. (See *People v. Collins* (1985), 106 Ill. 2d 237, 277, 478 N.E.2d 267.) There is enough in the evidence from which one can infer that Moore's motive for leaving was due to fear of reprisal for having identified defendants as the murderers. Moore testified that, within two weeks after informing the police of defendants' identification, she moved from the area where she had lived for 16 years. Moreover, the argument was based upon the evidence brought out by defendant on cross-examination of Moore. (See *People v. Hampton* (1962), 24 Ill. 2d 558, 182 N.E.2d 698 (not error to argue that witness held in protective custody to protect his

life where defendant injected that fact into trial).) Furthermore, even if there was some impropriety, we find it would be harmless in view of the total record here.

■ The third area of closing argument which defendants complain of involve repeated references to gang membership and gang activity. We have already held that the gang-related evidence was properly admitted. Thus, the prosecutor could properly argue that the murder was motivated by gang retaliation for the victim's having been a police informant.

■ The fourth area of argument which defendants allege was prejudicial involved Moore's credibility, also:

"Ladies and Gentlemen, the testimony of Monica Moore is sufficient, standing by itself, to convict. The Illinois Supreme Court has said it time and time again.

* * *

We have shown them, Ladies and Gentlemen, to be guilty beyond a reasonable doubt. It is not a quantitative factor. One witness and one witness alone is all the State needs to present."

Defendants argue this is a misstatement of the law since Moore's testimony would not be sufficient to convict "unless and until the jurors find her to be credible. A person is not automatically found guilty beyond a reasonable doubt simply because the State puts one witness on the stand." We find no error, since it is entirely proper to argue the credibility of a witness (*People v. Wallace* (1981), 100 Ill. App. 3d 424, 426 N.E.2d 1017), and it is untenable to suggest that a jury would construe the prosecutor's comment to require it to find defendants guilty based upon the testimony of a witness whom it disbelieved.

The fifth comment concerned the statement made in rebuttal that defense counsel could have called Bridgette McCall as a defense witness. The prosecution also argued:

"If he wanted to call the owner of this vehicle, the defendant's brother, he had as much right to call him as I do."

■ Defendants argue that the State's comments on the failure of a defendant to call witnesses on his behalf is prejudicial because it impermissibly shifts the burden of proof. (See *People v. Weinstein* (1966), 35 Ill. 2d 467, 469-70, 220 N.E.2d 432 (prosecutor impermissibly shifted burden of proof by repeatedly stating that it was defendant's burden to present evidence creating reasonable doubt of guilt); *People v. Lopez* (1987), 152 Ill. App. 3d 667, 678, 504 N.E.2d 862 (prosecutor improperly shifted burden of proof by arguing, "Where

are those people that can clear the defendant?"); *People v. Gian-grande* (1981), 101 Ill. App. 3d 397, 402, 428 N.E.2d 503 (prosecutor improperly shifted burden of proof by arguing, "Now where's the evidence that the defendant didn't do it?").) However, the prosecutor may comment on the defendant's failure to call a witness where it is in reply to defense counsel's argument that the State failed to call a witness equally available to the defense. *People v. Wheeler* (1955), 5 Ill. 2d 474, 126 N.E.2d 228; *People v. Buchanan*, 211 Ill. App. 3d 305, 570 N.E.2d 344; *People v. Johnson* (1968), 102 Ill. App. 2d 443, 243 N.E.2d 310.

For example, in *People v. Albanese* (104 Ill. 2d at 522), the prosecutor argued that "every defendant in a criminal case, through his counsel has subpoena power and don't for a minute think that if there's one piece of evidence the defendant didn't think would be helpful to him, you wouldn't get to see it. He can subpoena that pathologist if he likes. *** If those tracings helped him, he can subpoena anybody or any documents that he wishes to testify here before you." (*People v. Albanese*, 104 Ill. 2d at 522.) The court held that these arguments were proper because the prosecutor "did not state that defendant must provide the evidence that would create a reasonable doubt as to his guilt; rather, he pointed to defendant's failure to submit any evidence that would tend to refute the case against him. Such a comment is within the bounds of proper argument." *People v. Albanese*, 104 Ill. 2d at 522-23, citing *People v. Kubat* (1983), 94 Ill. 2d 437, 497, 447 N.E.2d 247; *People v. Blakes* (1976), 63 Ill. 2d 354, 359-60, 348 N.E.2d 170.

Here, defense counsel argued:

> "But when you heard a list of witnesses that the State may call or might call, whichever, James Williams's name was on that list, but he didn't testify. Bridgette McCall's name was on that list and she didn't testify."

Thus, the prosecutor's rebuttal argument was invited by defense counsel's argument that McCall did not testify and James Williams did not testify. *People v. Albanese*, 104 Ill. 2d at 522.

In regard to the sixth area of argument, defendants maintain that the State argued that Moore was telling the truth without "tell[ing] the jury that his assertions were based on the evidence. As a result, the overall viewpoint expressed to the jury, based upon the cumulative comments, was that, in the prosecutor's personal opinion, Monica Moore was telling the truth." Defendants give several examples, the most serious of which is:

"I believe the witness when she says that is the car, that is the trunk, that is where the body was in. He [defense counsel] doesn't believe her. He has a right to call the defendant's brother, just like I do."

This statement is somewhat troublesome, as it is not proper for a prosecutor to express a personal opinion on the issues. (*People v. Williams* (1962), 26 Ill. 2d 190, 186 N.E.2d 353.) Nevertheless, we must view such a comment in context of the entire argument. Ultimately, we believe the prosecutor left the issue of the witnesses' credibility to the jury. See *People v. Williams*, 26 Ill. 2d 190, 186 N.E.2d 353; *People v. Patterson* (1986), 140 Ill. App. 3d 421, 429, 488 N.E.2d 1283.

In regard to a seventh area of argument, defendants contend that the prosecutor was improperly attempting to appeal to the passions of the jury when he argued as follows:

"You are going to have a unique opportunity also. You are going to have an opportunity to send a message back out of this court room, back out to Cabrini Green, back out to the Monica Moores of the world, that their testimony isn't lost. That yes, there is justice in this world; that those men will not be permitted to take our streets from us; to decide who lives and dies by their guns; to decide they can kill; to say the Black Gangster Disciples rule Cabrini Green.

You can send a message, a message by signing guilty verdicts, this is our streets, [*sic*] this is our city, this is how the law is and we won't tolerate this behavior. That is what I am asking you to do, Ladies and Gentlemen, sign verdicts consistent with the evidence, consistent with common sense and most of all consistent with justice, guilty verdicts."

Defendant Williams argues that these arguments were "designed to distract the jury from the trial issues and to appeal to the emotions of the jury by evoking the juror's feelings about fear of crime and the duty of citizens to fight against crime. None of these emotional appeals had anything to do with the case at bar."

As a general rule, the prosecutor may comment on the evils of crime. (*People v. Albanese*, 104 Ill. 2d at 521; *People v. Williams*, 26 Ill. 2d 190, 186 N.E.2d 353; *People v. Taylor* (1974), 18 Ill. App. 3d 367, 309 N.E.2d 642.) A prosecutor may urge the fearless administration of the law. (*People v. Bryant* (1983), 94 Ill. 2d 514, 523-24, 447 N.E.2d 301; *People v. McNeal* (1987), 160 Ill. App. 3d 796, 803, 513 N.E.2d 897.) We find no error up to this point of the argument, where counsel urged the jury to uphold the law. See, *e.g., People v. Owens* (1984), 102 Ill. 2d 88, 105-06, 464 N.E.2d 261 (prosecutor could prop-

erly comment on evil results of crime and argue that in "modern America" people were "all too often *** prisoners in their homes at night" and were "afraid to walk the streets because they fear exactly what happened to" the victim); *People v. Wallace* (1981), 100 Ill. App. 3d 424, 433, 426 N.E.2d 1017 (prosecutor's argument that finding defendant not guilty would be rejecting the courage of State's witnesses since it "takes courage to come into Court and testify against someone who you know will brutally attack someone on the street," while knowing that "[j]urors like yourselves can let that person go" was proper argument about evils of crime and fearless administration of the law); *People v. Taylor* (1974), 18 Ill. App. 3d 367, 309 N.E.2d 642 (proper to argue that jury should not release defendant unless they want an unsafe community).

However, defendants also cite a related comment further in the prosecutor's argument, which we do find to be error:

"PROSECUTOR: He can do whatever he wants and he talks, and he left a little something out when he told you that these defendants are entitled to all of the justice that we had. Well, so is Aaron Buckles. So is his mother that cried from the witness stand. *So is Officer Ward, who wants to be told by you people whether he should continue to risk his life on a daily basis in that project or not.*

DEFENSE COUNSEL: Objection; objection.

THE COURT: Well, overruled. Counsel may argue.

PROSECUTOR: Whether he should walk back in around that project; *bother to do his work or not; what he does is doing any good; whether people accept him; whether people believe in what he does.* Is he waiting for some justice himself?" (Emphasis added.)

In *People v. Threadgill* (1988), 166 Ill. App. 3d 643, 649, 520 N.E.2d 86, the court found it was reversible error to repeatedly and at length argue that jury should convict defendant because "you can either back [the police] up when they're out there at night risking their lives for you and your family or you can turn your back on them." The court found that this was "clearly intended to imply that a not guilty verdict was tantamount to not supporting law enforcement in the community. This line of argument was calculated to inflame the jurors' fears that if they found the defendant not guilty, they were turning their backs on the *** police department, who were risking their lives for the jurors." *People v. Threadgill*, 166 Ill. App. 3d at 651.

The argument used in the present case was similarly improper in that it implied that a not guilty verdict would be a message to Officer Ward that he should not "bother to do his work," that his efforts at law enforcement were not "doing any good," that the people did not "accept him," and that the people do not "believe in what he does."

Unlike *Threadgill*, however, these were not repeated and lengthy arguments made throughout the State's closing argument. In addition, in *Threadgill*, the court found the arguments especially prejudicial because the case against defendant consisted entirely of testimonial evidence by police officers. Here, the crucial credibility issues concerned the eyewitness Moore's testimony.

Thus, after viewing the comment in the context of the entire record, we conclude that it was harmless. (See *People v. Tedder* (1980), 83 Ill. App. 3d 874, 883, 404 N.E.2d 437 (harmless error to argue jurors should find defendant guilty after they remember to "think *** of what's going on in your home now and *** [about] the people that you've left alone").) While such comments cannot be condoned by this court, we conclude that their effect was not so prejudicial as to merit reversal. See *People v. Parker* (1979), 72 Ill. App. 3d 679, 681, 391 N.E.2d 89.

In regard to the eighth area of comments defendants object to, defendants argue that the prosecutor improperly attacked defense counsel. It is improper for the prosecutor to attack defense counsel in an attempt to arouse the antagonism of the jury, as "the permissible limits of argument cannot be determined solely on the basis of attack and counterattack." (*People v. Monroe* (1977), 66 Ill. 2d 317, 324, 362 N.E.2d 295.) Defendants here cite several examples, including:

"PROSECUTOR: *** I hope you listened very carefully to what [defense counsel] said about Monica Moore in his opening statement, because there was an aura painted about that girl in your minds before she even took the witness stand to tell you what she saw.

He dragged [Moore] through the mud. He made her a whore, a junkie, a heroin addict, a cocaine addict.

DEFENSE COUNSEL: I never mentioned the word, whore. I never said that. I am not on trial here.

PROSECUTOR: Out in taverns all night, cocaine, heroin, drugs; abandoned her baby; out in taverns all night. That is what was in you folks' mind when that girl got on the witness stand. *** Where is the evidence of that. That girl wasn't a heroin addict. She wasn't a cocaine addict. That girl wasn't out in taverns all night. She wasn't out in taverns all night.

\* \* \*

\*\*\* It shows how meaningless this lawyer's words are.

\* \* \*

You can throw mud on all the people in the world you want.

\* \* \*

\*\*\* And that crumbles all of those 35 reasons, 135 reasons, 1035 reasons, why he thinks his client should go home.

He can't make that girl a liar \*\*\*.

\* \* \*

\*\*\* But he doesn't have anything else to argue; doesn't attack her on anything else. \*\*\* It is the same argument. It is a bunch of nonsense."

 To a substantial degree, these targeted prosecutorial remarks can be condoned either as proper comments regarding the discrepancy between defense counsel's statement to the jury and the evidence presented, or as comments invited by defense counsel in his summation. For example, in his opening statement defense counsel told the jury:

"Determine \*\*\* whether or not she has been going and buying drugs from an apartment where she doesn't even know the name of the drug seller, \*\*\* whether she is still hanging around taverns getting drunk instead of being at home taking care of her baby who she loves so much, whether or not she is in the early evening hours when she should be taking care of her baby still going to have a few beers and then going to buy some cocaine or heroin. Determine what type of person she is if she is \*\*\* going out buying beer and then topping it off with a few snorts of cocaine or a few injections of heroin."

Since defense counsel did not introduce any evidence to support these charges, comment on defense counsel's failure to prove them up would have at least a limited propriety.

In addition, during his summation, defense counsel invited retort when he pointed to the assistant State's Attorney by stating:

"The key to this case can be summed up in one sentence. Monica Moore, the courageous young witness, according to the State's Attorney \*\*\*.

\* \* \*

It appears that she was scared of the police, maybe scared of the State's Attorney and especially after she had given a statement. \*\*\*

\* \* \*

\*\*\* [W]hy was Monica scared, so she was crying? Who

knows? It was either the defendants or the State's Attorney and the police officers. The defendants [are] the only ones who are in custody, so they couldn't harm her."

Nevertheless, we find some degree of overkill in these comments of the defense counsel. Invitation does not license excess. However, although we do not encourage such arguments by the State and closely scrutinize their impact, we do not believe they deprived defendants of a fair trial in this case. (See *People v. Tedder*, 83 Ill. App. 3d 874, 404 N.E.2d 437.) We conclude that the prosecutor's remarks did not substantially prejudice defendant and were not reversible error where, in light of the overwhelming evidence against defendant, the verdict would not have been different absent those remarks. See *People v. Salazar* (1991), 211 Ill. App. 3d 899, 570 N.E.2d 802 (prosecutor's argument to jury that defense counsel was trying to "pull the wool over your eyes" was not reversible error); *People v. Bravos* (1969), 114 Ill. App. 2d 298, 252 N.E.2d 776 (prosecutor's arguments to jury that defense counsel was acting "tricky" and using unethical tactics were not so far out of line that defendants were denied a fair trial, and did not prejudicially influence jury such that verdict would have been different). *Cf. People v. Monroe*, 66 Ill. 2d at 323-24 (cumulative errors, including the reversible error where prosecutor accused defense counsel of "character assassination" of State's witnesses, argued that even defense counsel didn't believe in the "weak[ ] defense," and that defense counsel's argument was "fraudulent"; trial court correctly found that throughout the case "we have been trying the lawyers rather than the issues").

Finally, the ninth area of closing argument defendants point to involves bolstering testimony of witnesses simply because they were police officers.

"The way you prove people are gang members in the city is by trusting the police, who know their business, a gang officer, public housing officer, special enforcement officer—he knows his job."

Defendant Williams argues that the "implication was that defendant was a gang member and the State's witnesses were police officers and obviously more credible."

This court has recited the general principle that a police officer's testimony is to be evaluated in the same manner as that of any witness. (*People v. Ford* (1983), 113 Ill. App. 3d 659, 447 N.E.2d 564.) There is no presumption that an officer's testimony is more credible than that of any other witness. *People v. Defyn* (1991), 222 Ill. App. 3d 504, 584 N.E.2d 220.

The argument at issue here was improper if it was an attempt to sway the jurors by appealing to their emotions and hoping they would blindly "trust" Officer Ward simply because he was a police officer (instead of believing him because the facts he recited supported his opinion that defendants were gang members). It does not appear to us that the prosecutor was making such an argument, but rather was attempting to focus on the reliability of police investigatory procedures in collecting evidence of gang membership. The prosecutor's argument could be viewed as an attempt to focus the jury upon Officer Ward's experience, credentials and the factual support for his belief that defendants were gang members. Ward testified that he had been assigned to Cabrini Green for four years, his unit was particularly concerned with gang activities, and he had made over 300 gang-related arrests in that area. He relied on admissions made by defendants, information given to him by informants, defendants' tattoos, and Ward's own knowledge of gang structure and activity.

The general principle that no presumption exists that a police officer's testimony is more credible than that of other witnesses is particularly significant in cases, unlike the present case, where the question is whether the officer is lying, *e.g.*, when he testifies that he observed defendant in a criminal act, such as completing an illicit drug transaction, and defendant testifies to the contrary. For example, in the case cited by defendant Williams, *People v. Ford*, the court found that it was plain error, where the evidence was closely balanced, for the prosecution to repeatedly argue that the jury could choose between defendant, who was a "drug addict" and the State's witness, who was a "sworn police officer" who would not "pull a charade *** and perjure herself for a lousy 15 gram purchase of marijuana." (*People v. Ford*, 113 Ill. App. 3d at 662.) The court in *Ford* traced the general principle regarding a police officer's credibility to a divorce case. *People v. Ford*, 113 Ill. App. 3d at 662, citing *Crook v. Crook* (1946), 329 Ill. App. 588, 70 N.E.2d 209 (officers' testimony as to wife's whereabouts at critical time in question in opposition to that of wife's witnesses; court held it was improper to attribute greater credibility to police officers' version simply because of their vocation).

This type of credibility question is not present in the case before us. Officer Ward never testified to observing defendants in the act of committing a crime. As stated earlier, the State merely purported to argue the reliability of police investigatory procedures in gathering gang membership information.

We also note that the prosecutor's comments were largely invited, and were fair comment made during rebuttal on Ward's credibility,

where defense counsel had argued that Ward's testimony was insufficient to establish that defendants were gang members. Defense counsel also attacked the informants who had told Officer Ward that defendants were gang members, arguing that Ward "gathered information from people he rewarded with food, money, [and] reduced charges." We conclude that there was no error. See *People v. Hunter* (1984), 124 Ill. App. 3d 516, 548, 464 N.E.2d 659 (argument that police officers would not jeopardize their careers by perjuring themselves was invited by defense counsel's arguments that the officers had not found drugs in defendant's car and were merely playing the "game" of meeting an arrest quota: "Being a police officer is like being any professional. The name of the game is productivity").

Moreover, if there was any error, we find it was harmless. See *People v. Defyn*, 222 Ill. App. 3d 504, 584 N.E.2d 220 (argument that police officers "took an oath" and thus would not lie; court holds that even if it was improper, defendant did not demonstrate that the statement constituted a material factor in his conviction or that the verdict would have been different if the remarks had not been made); *People v. Richardson* (1985), 139 Ill. App. 3d 598, 601-02, 487 N.E.2d 716 (harmless error to argue that police officer was not lying about statements defendant made after his arrest, and that the jury "was in serious trouble" if "our police" officers were liars).

### VII. PRIOR CONSISTENT STATEMENT

Defendant Clay next contends that he was denied a fair trial due to the State's eliciting and later arguing prior consistent statements by Moore. A prior consistent statement cannot be used to corroborate a witness' testimony on direction examination. (*People v. Shum* (1987), 117 Ill. 2d 317, 512 N.E.2d 1183.) Such evidence can only be used to rebut charges of recent fabrication. (*People v. Powell* (1973), 53 Ill. 2d 465, 292 N.E.2d 409.) Moore testified on direct examination, without objection, as follows:

"Q. Did you tell those police the same thing you are telling this jury?

A. Yes."

The State argued this point in its closing argument: "And I asked her, what did you tell the police then, Monica? Same thing that I told the jury. I went with the police. I told them the same thing I told the jury."

Since no question of recent fabrication was injected by the defense, the introduction of her earlier consistent statement to the po-

lice was unwarranted. See *People v. Crayton* (1988), 175 Ill. App. 3d 932, 530 N.E.2d 651.

Defendant failed to object or include this issue in his post-trial motion and thus the issue has been waived. (*People v. Enoch*, 122 Ill. 2d 176, 522 N.E.2d 1124.) However, defendant maintains that the plain error rule applies.

The plain error rule (134 Ill. 2d R. 615(a)) provides a limited exception to the waiver rule. It permits a reviewing court to consider an alleged error not properly preserved for review in two situations. (*People v. Herrett* (1990), 137 Ill. 2d 195, 209-10, 561 N.E.2d 1.) First, a reviewing court may consider a claimed error not properly preserved where the evidence is closely balanced. (*People v. Williams* (1991), 147 Ill. 2d 173, 588 N.E.2d 983 (court takes cognizance of admission of prior consistent statement because evidence is closely balanced).) Application of the plain error rule, which mitigates the harshness of the strict application of waiver, is "especially [likely] where the evidence is closely balanced." (*People v. McCullum* (1977), 66 Ill. 2d 306, 315-16, 362 N.E.2d 307.) "There are *** certain factors which clearly have a positive influence on the application of the doctrine. The more closely balanced the evidence, for example, the greater the likelihood that an error otherwise not viewed as sufficiently patent or fundamental will meet the standard." W. LaFave & J. Israel, 3 Criminal Procedure §26.5, at 256 (1984), citing *People v. McCullum*, 66 Ill. 2d 306, 362 N.E.2d 307.

The evidence here was not closely balanced. As discussed above, the eyewitness' testimony was substantially corroborated by the evidence of the police officers and by the physical evidence. Thus, the first prong of the plain error rule is not satisfied in this case.

Under the second prong of the plain error rule, a reviewing court may consider the claimed error where "the error is so fundamental and of such magnitude that the accused was denied a fair trial. The rule is invoked where it is necessary to preserve the integrity of the judicial process and provide a fair trial." *People v. Herrett*, 137 Ill. 2d at 210.

In *People v. Crayton* (1988), 175 Ill. App. 3d 932, 530 N.E.2d 651, the court held that although prior consistent statements were improperly introduced, no plain error occurred. The court first found that the evidence was not close factually. The court went on to hold that "defendant failed to demonstrate any plain error sufficient to overcome the waiver doctrine" because the "entire contents of the statements were never read to the jury or introduced into evidence." (*Crayton*, 175 Ill. App. 3d at 949.) Instead, three of the four witnesses

only referred to the fact that prior written statements had been made, and the fourth witness merely referred to a limited portion of one of the prior statements. (*Crayton*, 175 Ill. App. 3d at 949.) Similarly, in the present case, Moore only referred to the fact that a prior consistent statement had been made.

In *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164, the court found that the admission of a prior consistent statement was not plain error where the victim testified that she had told her sister, sister's husband and a police officer about the crime. The court held that it did not amount to plain error where the victim had testified and was subject to cross-examination. The court reasoned that "because everything of significance in the statements was corroborated by the victim's testimony, no plain error occurred." (*People v. Woith* (1984), 126 Ill. App. 3d 817, 823, 467 N.E.2d 614.) Similarly, most of Moore's testimony was corroborated here.

In the present case, we have nothing more than a single "yes" given in reply to the question, "Did you tell those police the same thing you are telling this jury?" We cannot say the error was of such a magnitude as to deprive defendant of a fair trial. Thus, the second prong of the plain error test has also not been met.

This error here was not of the magnitude found, for example, *People v. Davis* (1984), 130 Ill. App. 3d 41, 473 N.E.2d 387, where there were nine separate instances in the victim's testimony, and that of other State's witnesses, of prior consistent statements. For example, the victim testified that after the crime, she told a friend she had been robbed and beaten; then told her mother; then told another friend; and also told the investigating police officer, "recount[ing] again how she was robbed" by defendants; and finally told one defendant's mother, again recounting to the jury "all the details of the crime." (*People v. Davis*, 130 Ill. App. 3d at 53.) The court held that despite defense counsel's failure to object to some of the prior consistent statements, the plain error rule would be invoked. "Because the sheer volume of prior consistent statements admitted at trial may have improperly influenced the jury's verdict of armed robbery, we elect to consider the defendant's contentions under the plain-error doctrine." (*People v. Davis*, 130 Ill. App. 3d at 54.) The court then found that the admission of the prior consistent statements was reversible error. *People v. Davis*, 130 Ill. App. 3d at 57.

Error of a similarly egregious nature was found in *People v. Hudson* (1980), 86 Ill. App. 3d 335, 340, 408 N.E.2d 325, where throughout the trial, the State's witnesses "read into the record prior consistent statements they had given to an investigating officer." (*People v.*

*Hudson,* 86 Ill. App. 3d at 338.) The court held that there was plain error requiring reversal, finding that the "prosecution must have known such a tactic to be highly improper, bordering on prosecutorial misconduct and overreaching." *People v. Hudson,* 86 Ill. App. 3d at 340.

Defendants rely on *People v. Wheeler* (1989), 186 Ill. App. 3d 422, 542 N.E.2d 524. In that case, where the trial was held without the defendant being present, the State was permitted to introduce testimony from the eyewitness who saw defendant throw a brick through the eyewitness' living room window, that shortly after the crime he "gave police a statement describing" the individual who committed the crime and the vehicle that individual used. In closing argument the prosecutor argued, "He gave you that description as he testified immediately thereafter to the police. He also identified the vehicle *** to the police at that date, and he remembers it to this date." (*People v. Wheeler,* 186 Ill. App. 3d at 426.) The court held this was sufficiently egregious to constitute plain error requiring reversal where "proof of defendant's guilt depended almost entirely on the testimony" of the eyewitness. (*People v. Wheeler,* 186 Ill. App. 3d at 428.) Here, the entire case against defendant consisted of more than Moore's witnessing of the shooting, although that was a key fact. Unlike *Wheeler,* where there was nothing corroborating the eyewitness's identification of defendant except his mother's testimony that she saw a black man running away, here Moore's testimony was corroborated by the police officers' testimony that the victim was a police informant, and by the physical evidence, including the bloodstained rug from the trunk of the car in which the dead body was transported.

We conclude that no plain error occurred here.

VIII. SENTENCING: IMPROPER TESTIMONY

Next, defendant Clay alone argues that a new sentencing hearing is required because one witness' testimony was not accurate.

At the sentencing hearing, David Robinson, a Chicago Housing Authority maintenance mechanic, testified that on August 6, 1987, he worked at Cabrini Green. Robinson was driving nearby when he saw defendant Clay, whom Robinson had known for 10 years, arguing with a friend. Clay "ran out of the Hudson playground and shot through my car door and shot me in the side." Robinson testified that he signed a complaint but the case had not yet been prosecuted.

The rules of evidence governing trial and sentencing procedures differ. (*Williams v. New York* (1949), 337 U.S. 241, 246-51, 93 L. Ed. 1337, 1342-44, 69 S. Ct. 1079, 1083-85.) Evidence of criminal conduct

may be introduced at a sentencing hearing, even if no prosecution or conviction resulted from that misconduct, as long as the sentencing judge exercises care to determine the relevance and insure the accuracy of the information considered. *People v. La Pointe* (1981), 88 Ill. 2d 482, 494-99, 431 N.E.2d 344; *People v. Goebel* (1987), 161 Ill. App. 3d 113, 514 N.E.2d 60.

In the present case, there was extensive cross-examination by defense counsel regarding the circumstances of the shooting. For example, defense counsel brought out that earlier that day, Robinson had slapped a man named Jimmy Chancellor. Later, while Robinson was driving near the Hudson playground, Chancellor ran within 20 feet of the car and shot at Robinson, missing him. Robinson, who was laughing, drove another 15 feet when defendant Clay ran out and shot him.

■ We conclude that the trial court could properly consider Robinson's testimony at the sentencing hearing. The information was clearly relevant to the question of the "likelihood or unlikelihood that defendant[s] would commit other offenses." (*People v. La Pointe*, 88 Ill. 2d at 498; see also *People v. Brisbon* (1985), 106 Ill. 2d 342, 478 N.E.2d 402.) The accuracy of the fact that defendant shot Robinson was not challenged. (See *People v. La Pointe*, 88 Ill. 2d 482, 431 N.E.2d 344.) The information regarding prior misconduct was presented in the form of sworn testimony in open court and was subject to extensive cross-examination. See *People v. La Pointe*, 88 Ill. 2d 482, 431 N.E.2d 344; *People v. Goebel*, 161 Ill. App. 3d 113, 514 N.E.2d 60.

IX. EXCESSIVE SENTENCING

Both defendants argue that the sentences were excessive. A sentencing decision is a matter of judicial discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) That decision will not be altered on review absent an abuse of discretion. *People v. Perruquet*, 68 Ill. 2d 149, 368 N.E.2d 882.

Where defendants are similarly situated, they should receive similar sentences. (*People v. Paino* (1985), 137 Ill. App. 3d 645, 654, 484 N.E.2d 1106.) A disparate sentence is warranted only if there is a difference in the nature and extent of each defendant's participation. *People v. Godinez* (1982), 91 Ill. 2d 47, 55, 434 N.E.2d 1121.

■ Here, both defendants confronted the victim and accused him of being a "stool pigeon." Williams pointed his gun at the victim, and Clay held a gun, also. Both defendants carried the victim's body to the car, brought it to a factory area, removed it from the trunk and placed it on the ground. The only difference, therefore, is that only

Clay actually shot the victim. That difference, considering their total complicity and participation, does not mandate a sentence differential.

Defendants argue that the trial court did not adequately weigh their rehabilitative potential. While rehabilitative potential must be considered by the sentencing court, the court need not give that potential greater weight than the seriousness of the crime. *People v. Bunch* (1987), 159 Ill. App. 3d 494, 518, 512 N.E.2d 748.

The record here indicates that the trial court considered defendants' rehabilitative potential. The court expressly stated that it considered defendants' presentence investigation reports (PSI). The PSI reports included defendants' full background which pertains to their rehabilitative potential.

Defendant Clay's reliance on *People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606, and *People v. Smith* (1977), 50 Ill. App. 3d 320, 365 N.E.2d 558, is misplaced.

In *Steffens*, the court on appeal reduced the 30-year sentence for murder to 20 years' imprisonment based on the fact that defendant had just turned 16; had only one prior conviction (burglary as a juvenile three years earlier); had never been convicted of a violent crime; cooperated with his probation officer; the murder was not calculated or premeditated; and the victim initiated the confrontation with defendant and the murder resulted from a sudden escalation of the encounter between defendant and the victim's family. *People v. Steffens*, 131 Ill. App. 3d at 152.

In *Smith*, the court on appeal reduced the 60- to 100-year sentence for murder to a sentence of 20 to 40 years' imprisonment, based on the fact that defendant was only 18 years old; had only one prior juvenile misdemeanor conviction; and the nature of the crime. *People v. Smith*, 50 Ill. App. 3d 320, 365 N.E.2d 558.

In contrast, here defendant Clay was 23 years old at the time of sentencing and had two prior adult felony convictions for robbery and possession of a stolen motor vehicle. Instead of cooperating with his probation officer, he asserted an alibi for the first time after trial. Defendant Williams was 33 years old and apparently had 9 or 10 prior convictions. Moreover, the sentencing court could find it significant that defendants executed the victim in a cold, calculated manner as punishment for his cooperating with the police department's investigation of illegal gang activity. Thus, defendants' prior criminal record and the nature of the crime support the sentence imposed by the trial court.

Clay also contends that the legislature has found 20 years' imprisonment to be adequate time for punishment and rehabilitation for the

crime of murder. The relevant statute states that 20 to 60 years is appropriate for murder. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1).) The sentences here were within the statutory limits.

## X. CORRECTION TO MITTIMUS

Defendants next contend that each mittimus should be amended to reflect only one conviction for murder. The State agrees. The jury found defendants guilty of murder and concealment of a homicidal death. The court merged the convictions. The court then stated it was sentencing each defendant to a term of 40 years' imprisonment. However, the order of sentence and commitment for each defendant erroneously states that the sentence on "each count [is] concurrent." Moreover, under the "offense" section of the order, both defendants' forms list murder under section 9—1(a)(1), and murder under section 9—1(a)(2). Ill. Rev. Stat. 1989, ch. 38, pars. 9—1(a)(1), (a)(2).

Where there was only one victim, there can only be one murder conviction. (*People v. Mack* (1984), 105 Ill. 2d 103, 137, 473 N.E.2d 880.) Thus, here the defendants' convictions under section 9—1(a)(1) should be left as is, and the defendants' convictions under section 9—1(a)(2) should be vacated. Each defendant's mittimus should be corrected to reflect this change. See *People v. Torres* (1986), 146 Ill. App. 3d 250, 259, 496 N.E.2d 1060.

There is no need to remand for resentencing because nothing in the record indicates the court was influenced by the second conviction when it imposed sentence upon defendants. See *People v. Lego* (1987), 116 Ill. 2d 323, 344-45, 507 N.E.2d 800; *People v. Smith* (1984), 124 Ill. App. 3d 805, 813, 465 N.E.2d 101; *People v. Garza* (1984), 125 Ill. App. 3d 182, 198, 465 N.E.2d 595.

Defendants rely on *People v. Bone* (1982), 103 Ill. App. 3d 1066, 432 N.E.2d 329. In *Bone*, unlike the present case, the jury found defendant guilty of two counts of murder when only one person had been killed, and the trial court entered judgment on both counts.

## XI. CUMULATIVE ERRORS

Defendants next contend that the cumulative effect of the errors deprived them of their right to a fair trial. (See *People v. Albanese* (1984), 102 Ill. 2d 54, 83, 464 N.E.2d 206; *People v. Whitlow* (1982), 89 Ill. 2d 322, 341, 433 N.E.2d 629.) Although we have found individual error in regard to the prior consistent statement of Moore, and several of the comments made in closing argument, no individual error was sufficient to alter the outcome. We further find, after reviewing the record in its entirety and each individual error in context,

that the aggregate of these errors is also not enough to prejudice the outcome of the case in view of the overwhelming evidence of defendants' guilt in this case. See *People v. Buchanan*, 211 Ill. App. 3d 305, 570 N.E.2d 344.

XII. INEFFECTIVE ASSISTANCE OF COUNSEL: FAILURE TO OBJECT

Defendants next contend that they were denied effective assistance of counsel for failure to object or preserve any of the above issues for appeal. We have found no ineffective assistance of counsel, as stated above. Moreover, failure to preserve an issue for appeal does not constitute ineffective assistance of counsel where there is overwhelming evidence of defendant's guilt. (See *People v. Enoch*, 122 Ill. 2d at 201-08.) In addition, we have addressed all questions which were waived by counsel's failure to object.

For the foregoing reasons, the judgments of the circuit court of Cook County are affirmed; the causes are remanded for correction of each defendant's mittimus.

Judgments affirmed; causes remanded with directions.

McNULTY, P.J., and MURRAY, J., concur.